# AIR FRANCE *v.* SAKS

No. 83–1785.   Argued January 15, 1985—Decided March 4, 1985

O'CONNOR, J., delivered the opinion of the Court, in which all other Members joined, except POWELL, J., who took no part in the consideration or decision of the case.

*Stephen C. Johnson* argued the cause for petitioner. With him on the briefs was *Lawrence N. Minch.*

*Carroll E. Dubuc* argued the cause for the Republic of France as *amicus curiae* urging reversal. With him on the brief was *Peter Hoenig.*

*Bennett M. Cohen* argued the cause for respondent. With him on the brief were *Daniel U. Smith* and *Albert R. Abramson.* *

JUSTICE O'CONNOR delivered the opinion of the Court.

Article 17 of the Warsaw Convention[1] makes air carriers liable for injuries sustained by a passenger "if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." We granted certiorari, 469 U. S. 815 (1984), to resolve a conflict among the Courts of Appeals as to the proper definition of the word "accident" as used in this international air carriage treaty.

I

On November 16, 1980, respondent Valerie Saks boarded an Air France jetliner in Paris for a 12-hour flight to Los Angeles. The flight went smoothly in all respects until, as the aircraft descended to Los Angeles, Saks felt severe pressure and pain in her left ear. The pain continued after the plane landed, but Saks disembarked without informing any Air France crew member or employee of her ailment. Five days later, Saks consulted a doctor who concluded that she had become permanently deaf in her left ear.

Saks filed suit against Air France in California state court, alleging that her hearing loss was caused by negligent maintenance and operation of the jetliner's pressurization system. App. 2. The case was removed to the United States District Court for the Central District of California. After extensive

---

*Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Lee, Acting Assistant Attorney General Willard, Deputy Solicitor General Geller, Alan I. Horowitz,* and *Mark H. Gallant;* and for the International Air Transport Association by *Randal R. Craft, Jr.*

[1] Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T. S. No. 876 (1934), note following 49 U. S. C. App. § 1502.

discovery, Air France moved for summary judgment on the ground that respondent could not prove that her injury was caused by an "accident" within the meaning of the Warsaw Convention. The term "accident," according to Air France, means an "abnormal, unusual or unexpected occurrence aboard the aircraft." *Id.*, at 9. All the available evidence, including the postflight reports, pilot's affidavit, and passenger testimony, indicated that the aircraft's pressurization system had operated in the usual manner. Accordingly, the airline contended that the suit should be dismissed because the only alleged cause of respondent's injury—normal operation of a pressurization system—could not qualify as an "accident." In her opposition to the summary judgment motion, Saks acknowledged that "[t]he sole question of law presented . . . by the parties is whether a loss of hearing proximately caused by normal operation of the aircraft's pressurization system is an 'accident' within the meaning of Article 17 of the Warsaw Convention . . . ." *Id.*, at 30. She argued that "accident" should be defined as a "hazard of air travel," and that her injury had indeed been caused by such a hazard.

Relying on precedent which defines the term "accident" in Article 17 as an "unusual or unexpected" happening, see *DeMarines* v. *KLM Royal Dutch Airlines*, 580 F. 2d 1193, 1196 (CA3 1978), the District Court granted summary judgment to Air France. See also *Warshaw* v. *Trans World Airlines, Inc.*, 442 F. Supp. 400, 412–413 (ED Pa. 1977) (normal cabin pressure changes are not "accidents" within the meaning of Article 17). A divided panel of the Court of Appeals for the Ninth Circuit reversed. 724 F. 2d 1383 (1984). The appellate court reviewed the history of the Warsaw Convention and its modification by the 1966 Montreal Agreement, a private agreement among airlines that has been approved by the United States Government. Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, Agreement CAB 18900, 31 Fed. Reg. 7302 (1966), note following 49 U. S. C. App. § 1502. The court

concluded that the language, history, and policy of the Warsaw Convention and the Montreal Agreement impose absolute liability on airlines for injuries proximately caused by the risks inherent in air travel. The court found a definition of "accident" consistent with this history and policy in Annex 13 to the Convention on International Civil Aviation, Dec. 7, 1944, 61 Stat. 1180, T. I. A. S. No. 1591, 15 U. N. T. S. 295; conformed to in 49 CFR § 830.2 (1984): "an occurrence associated with the operation of an aircraft which takes place between the time any person boards the aircraft with the intention of flight and all such persons have disembarked . . . ." 724 F. 2d, at 1385. Normal cabin pressure changes qualify as an "accident" under this definition. A dissent agreed with the District Court that "accident" should be defined as an unusual or unexpected occurrence. *Id.*, at 1388 (Wallace, J.). We disagree with the definition of "accident" adopted by the Court of Appeals, and we reverse.

## II

Air France is liable to a passenger under the terms of the Warsaw Convention only if the passenger proves that an "accident" was the cause of her injury. *MacDonald* v. *Air Canada*, 439 F. 2d 1402 (CA1 1971); *Mathias* v. *Pan Am World Airways, Inc.*, 53 F. R. D. 447 (WD Pa. 1971). See 1 C. Shawcross & K. Beaumont, Air Law ¶ VII(147) (4th ed. 1984); D. Goedhuis, National Airlegislations and the Warsaw Convention 199 (1937). The narrow issue presented is whether respondent can meet this burden by showing that her injury was caused by the normal operation of the aircraft's pressurization system. The proper answer turns on interpretation of a clause in an international treaty to which the United States is a party. "[T]reaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Choctaw Nation of Indians* v. *United States*, 318 U. S. 423, 431–432 (1943). The

analysis must begin, however, with the text of the treaty and the context in which the written words are used. See *Maximov* v. *United States,* 373 U. S. 49, 53–54 (1963).

## A

Article 17 of the Warsaw Convention establishes the liability of international air carriers for harm to passengers. Article 18 contains parallel provisions regarding liability for damage to baggage. The governing text of the Convention is in the French language, and we accordingly set forth the French text of the relevant part of Articles 17 and 18 in the margin.[2] The official American translation of this portion of the text, which was before the Senate when it ratified the Convention in 1934, reads as follows:

"Article 17

"The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, *if the accident which caused the damage* so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

"Article 18

"(1) The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, *if the occurrence*

---

[2] "Article 17

"Le transporteur est responsable du dommage survenu en cas de mort, de blessure ou de toute autre lésion corporelle subie par un voyageur *lorsque l'accident qui a causé le dommage* s'est produit à bord de l'aéronef ou au cours de toutes opérations d'embarquement et de débarquement.

"Article 18

"(1) Le transporteur est responsable du dommage survenu en cas destruction, perte ou avarie de bagages enregistrés ou de marchandises *lorsque l'événement qui a causé le dommage* s'est produit pendant le transport aérien." 49 Stat. 3005 (emphasis added).

Article 36 of the Convention recites that it is drawn in French. *Id.,* at 3008.

*which caused the damage* so sustained took place during the transportation by air." 49 Stat. 3018–3019.

Two significant features of these provisions stand out in both the French and the English texts. First, Article 17 imposes liability for injuries to passengers caused by an "accident," whereas Article 18 imposes liability for destruction or loss of baggage caused by an "occurrence." This difference in the parallel language of Articles 17 and 18 implies that the drafters of the Convention understood the word "accident" to mean something different than the word "occurrence," for they otherwise logically would have used the same word in each article. See Goedhuis, *supra,* at 200–201; M. Milde, The Problems of Liabilities in International Carriage by Air 62 (Caroline Univ. 1963). The language of the Convention accordingly renders suspect the opinion of the Court of Appeals that "accident" means "occurrence."

Second, the text of Article 17 refers to an accident *which caused* the passenger's injury, and not to an accident which *is* the passenger's injury. In light of the many senses in which the word "accident" can be used, this distinction is significant. As Lord Lindley observed in 1903:

> "The word 'accident' is not a technical legal term with a clearly defined meaning. Speaking generally, but with reference to legal liabilities, an accident means any unintended and unexpected occurrence which produces hurt or loss. But it is often used to denote any unintended and unexpected loss or hurt apart from its cause; and if the cause is not known the loss or hurt itself would certainly be called an accident. The word 'accident' is also often used to denote both the cause and the effect, no attempt being made to discriminate between them." *Fenton* v. *J. Thorley & Co.,* [1903] A. C. 443, 453.

In Article 17, the drafters of the Warsaw Convention apparently did make an attempt to discriminate between "the cause and the effect"; they specified that air carriers would

be liable if an accident *caused* the passenger's injury. The text of the Convention thus implies that, however we define "accident," it is the *cause* of the injury that must satisfy the definition rather than the occurrence of the injury alone. American jurisprudence has long recognized this distinction between an accident that is the *cause* of an injury and an injury that is itself an accident. See *Landress* v. *Phoenix Mutual Life Ins. Co.*, 291 U. S. 491 (1934).

While the text of the Convention gives these two clues to the meaning of "accident," it does not define the term. Nor is the context in which the term is used illuminating. See Note, Warsaw Convention—Air Carrier Liability for Passenger Injuries Sustained Within a Terminal, 45 Ford. L. Rev. 369, 388 (1976) ("The language of Article 17 is stark and undefined"). To determine the meaning of the term "accident" in Article 17 we must consider its French legal meaning. See *Reed* v. *Wiser*, 555 F. 2d 1079 (CA2), cert. denied, 434 U. S. 922 (1977); *Block* v. *Compagnie Nationale Air France*, 386 F. 2d 323 (CA5 1967), cert. denied, 392 U. S. 905 (1968). This is true not because "we are forever chained to French law" by the Convention, see *Rosman* v. *Trans World Airlines, Inc.*, 34 N. Y. 2d 385, 394, 314 N. E. 2d 848, 853 (1974), but because it is our responsibility to give the specific words of the treaty a meaning consistent with the shared expectations of the contracting parties. *Reed, supra,* at 1090; *Day* v. *Trans World Airlines, Inc.*, 528 F. 2d 31 (CA2 1975), cert. denied, 429 U. S. 890 (1976). We look to the French legal meaning for guidance as to these expectations because the Warsaw Convention was drafted in French by continental jurists. See Lowenfeld & Mendelsohn, The United States and the Warsaw Convention, 80 Harv. L. Rev. 497, 498–500 (1967).

A survey of French cases and dictionaries indicates that the French legal meaning of the term "accident" differs little from the meaning of the term in Great Britain, Germany, or the United States. Thus, while the word "accident" is often

used to refer to the *event* of a person's injury,[3] it is also sometimes used to describe a *cause* of injury, and when the word is used in this latter sense, it is usually defined as a fortuitous, unexpected, unusual, or unintended event. See 1 Grand Larousse de La Langue Française 29 (1971) (defining "accident" as "Evénement fortuit et fâcheux, causant des dommages corporels ou matériels"); *Air France* v. *Haddad, Judgment of June 19, 1979*, Cour d'appel de Paris, Première Chambre Civile, 1979 Revue Française de Droit Aérien 327, 328, appeal rejected, *Judgment of February 16, 1982*, Cour de Cassation, 1982 Bull. Civ. I 63. This parallels British and American jurisprudence. See *Fenton* v. *J. Thorley & Co., supra; Landress* v. *Phoenix Mutual Life Ins. Co., supra; Koehring Co.* v. *American Automobile Ins. Co.*, 353 F. 2d 993 (CA7 1965). The text of the Convention consequently suggests that the passenger's injury must be caused by an unexpected or unusual event.

## B

This interpretation of Article 17 is consistent with the negotiating history of the Convention, the conduct of the parties to the Convention, and the weight of precedent in foreign and American courts. In interpreting a treaty it is proper, of course, to refer to the records of its drafting and negotiation. *Choctaw Nation of Indians* v. *United States*, 318 U. S., at 431. In part because the "travaux preparatoires" of the Warsaw Convention are published and generally available to litigants, courts frequently refer to these materials to resolve ambiguities in the text. See *Trans World Airlines, Inc.* v. *Franklin Mint Corp.*, 466 U. S. 243, 259 (1984); *Maugnie* v. *Companie Nationale Air France*, 549 F. 2d 1256 (CA9 1977); *Fothergill* v. *Monarch Airlines, Ltd.*, [1980] 2 All E. R. 696 (H. L.).

---

[3] See, *e. g.*, M. LeGrand, Dictionnaire Usuel de Droit 8 (1931) (defining "accident" as "Événement fortuit et malheureux qui ouvre à la victime, soit par suite de l'imprévoyance ou de la négligence d'une personne, soit en vertu du 'risque professionel,' droit à une réparation pécuniaire").

The treaty that became the Warsaw Convention was first drafted at an international conference in Paris in 1925. The protocol resulting from the Paris Conference contained an article specifying: "The carrier is liable for accidents, losses, breakdowns, and delays. It is not liable if it can prove that it has taken reasonable measures designed to pre-empt damage . . . ."[4] The protocol drafted at Paris was revised several times by a committee of experts on air law,[5] and then submitted to a second international conference that convened in Warsaw in 1929. The draft submitted to the conference stated:

> "The carrier shall be liable for damage sustained during carriage:
> "(a) in the case of death, wounding, or any other bodily injury suffered by a traveler;
> "(b) in the case of destruction, loss, or damage to goods or baggage;
> "(c) in the case of delay suffered by a traveler, goods, or baggage." International Conference on Air Law Affecting Air Questions, Minutes, Second International Conference on Private Aeronautical Law, October 4–12, 1929, Warsaw 264–265 (R. Horner & D. Legrez trans. 1975).

Article 22 of this draft, like the original Paris draft, permitted the carrier to avoid liability by proving it had taken reasonable measures to avoid the damage. *Id.*, at 265. None of the early drafts required that an accident *cause* the passenger's injury.

---

[4] "Le transporteur est responsable des accidents, pertes, avaries et retards. Il n'est pas responsable s'il prouve avoir pris les mesures raisonnables pour éviter le dommage . . . ." [1925 Paris] Conférence Internationale de Droit Privé Aérien 87 (1936).

[5] See Report of the Second Session, International Technical Committee of Legal Experts on Air Questions (1927); Report of the Third Session, International Technical Committee of Legal Experts on Air Questions (1928).

At Warsaw, delegates from several nations objected to the application of identical liability rules to both passenger injuries and damage to baggage, and the German delegation proposed separate liability rules for passengers and baggage. *Id.*, at 36. The need for separate rules arose primarily because delegates thought that liability for baggage should commence upon delivery to the carrier, whereas liability for passengers should commence when the passengers later embark upon the aircraft. *Id.*, at 72–74 (statements of French, Swiss, and Italian delegates). The Reporter on the Preliminary Draft of the Convention argued it would be too difficult to draft language specifying this distinction, and that such a distinction would be unnecessary because "Article 22 establishes a very mitigated system of liability for the carrier, and from the moment that the carrier has taken the reasonable measures, he does not answer for the risks, nor for the accidents occur[r]ing to people by the fault of third parties, nor for accidents occur[r]ing for any other cause." *Id.*, at 77–78 (statement of Reporter De Vos). The delegates were unpersuaded, and a majority voted to have a drafting committee rework the liability provisions for passengers and baggage. *Id.*, at 83.

A few days later, the drafting committee proposed the liability provisions that became Articles 17 and 18 of the Convention. Article 20(1) of the final draft contains the "necessary measures" language which the Reporter believed would shield the carrier from liability for "the accidents occur[r]ing to people by the fault of third parties" and for "accidents occur[r]ing for any other cause." Nevertheless, the redrafted Article 17 also required as a prerequisite to liability that an accident *cause* the passenger's injury, whereas the redrafted Article 18 required only that an occurrence cause the damage to baggage. Although Article 17 and Article 18 as redrafted were approved with little discussion, the President of the drafting committee observed that "given that there are *entirely different* liability cases: death or wounding, disappear-

ance of goods, delay, we have deemed that it would be better to begin by setting out *the causes* of liability for persons, then for goods and baggage, and finally liability in the case of delay." *Id.*, at 205 (statement of Delegate Giannini) (emphasis added). This comment at least implies that the addition of language of causation to Articles 17 and 18 had a broader purpose than specification of the time at which liability commenced. It further suggests that the causes of liability for persons were intended to be different from the causes of liability for baggage. The records of the negotiation of the Convention accordingly support what is evident from its text: A passenger's injury must be caused by an accident, and an accident must mean something different than an "occurrence" on the plane. Like the text of the Convention, however, the records of its negotiation offer no precise definition of "accident."

Reference to the conduct of the parties to the Convention and the subsequent interpretations of the signatories helps clarify the meaning of the term. At a Guatemala City International Conference on Air Law in 1971, representatives of many of the Warsaw signatories approved an amendment to Article 17 which would impose liability on the carrier for an "event which caused the death or injury" rather than for an "accident which caused" the passenger's injury, but would exempt the carrier from liability if the death or injury resulted "solely from the state of health of the passenger." International Civil Aviation Organization, 2 Documents of the International Conference on Air Law, Guatemala City, ICAO Doc. 9040–LC/167–2, p. 189 (1972). The Guatemala City Protocol of 1971 and the Montreal Protocols Nos. 3 and 4 of 1975 include this amendment, see S. Exec. Rep. No. 98–1 (1983), but have yet to be ratified by the Senate, and therefore do not govern the disposition of this case. The statements of the delegates at Guatemala City indicate that they viewed the switch from "accident" to "event" as expanding the scope of carrier liability to passengers. The Swedish

Delegate, for example, in referring to the choice between the words "accident" and "event," emphasized that the word "accident" is too narrow because a carrier might be found liable for "other acts which could not be considered as accidents." See International Civil Aviation Organization, 1 Minutes of the International Conference on Air Law, ICAO Doc. 9040–LC/167–1, p. 34 (1972). See also Mankiewicz, Warsaw Convention: The 1971 Protocol of Guatemala City, 20 Am. J. Comp. L. 335, 337 (1972) (noting that changes in Article 17 were intended to establish "strict liability").

In determining precisely what causes can be considered accidents, we "find the opinions of our sister signatories to be entitled to considerable weight." *Benjamins* v. *British European Airways*, 572 F. 2d 913, 919 (CA2 1978), cert. denied, 439 U. S. 1114 (1979). While few decisions are precisely on point, we note that, in *Air France* v. *Haddad, Judgment of June 19, 1979*, Cour d'appel de Paris, Première Chambre Civile, 1979 Revue Française de Droit Aérien, at 328, a French court observed that the term "accident" in Article 17 of the Warsaw Convention embraces causes of injuries that are fortuitous or unpredictable. European legal scholars have generally construed the word "accident" in Article 17 to require that the passenger's injury be caused by a sudden or unexpected event other than the normal operation of the plane. See, *e. g.*, O. Riese & J. Lacour, Précis de Droit Aérien 264 (1951) (noting that Swiss and German law require that the damage be caused by an accident, and arguing that an accident should be construed as an event which is sudden and independent of the will of the carrier); 1 C. Shawcross & K. Beaumont, Air Law ¶ VII(148) (4th ed. 1984) (noting that the Court of Appeals for the Third Circuit's definition of accident accords with some English definitions and "might well commend itself to an English court"). These observations are in accord with American decisions which, while interpreting the term "accident" broadly, *Maugnie* v. *Compagnie Nationale Air France*, 549 F. 2d, at 1259, nevertheless

refuse to extend the term to cover routine travel procedures that produce an injury due to the peculiar internal condition of a passenger. See, *e. g.*, *Abramson* v. *Japan Airlines Co.*, 739 F. 2d 130 (CA3 1984) (sitting in airline seat during normal flight which aggravated hernia not an "accident"), cert. pending, No. 84–939; *MacDonald* v. *Air Canada*, 439 F. 2d 1402 (CA5 1971) (fainting while waiting in the terminal for one's baggage not shown to be caused by an "accident"); *Scherer* v. *Pan American World Airways, Inc.*, 54 App. Div. 2d 636, 387 N. Y. S. 2d 580 (1976) (sitting in airline seat during normal flight which aggravated thrombophlebitis not an "accident").

## III

We conclude that liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger. This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries. *Maugnie, supra*, at 1262. For example, lower courts in this country have interpreted Article 17 broadly enough to encompass torts committed by terrorists or fellow passengers. See *Evangelinos* v. *Trans World Airlines, Inc.*, 550 F. 2d 152 (CA3 1977) (en banc) (terrorist attack); *Day* v. *Trans World Airlines, Inc.*, 528 F. 2d 31 (CA2 1975) (en banc) (same), cert. denied, 429 U. S. 890 (1976); *Krystal* v. *British Overseas Airways Corp.*, 403 F. Supp. 1322 (CD Cal. 1975) (hijacking); *Oliver* v. *Scandinavian Airlines System*, 17 CCH Av. Cas. 18,283 (Md. 1983) (drunken passenger falls and injures fellow passenger). In cases where there is contradictory evidence, it is for the trier of fact to decide whether an "accident" as here defined caused the passenger's injury. See *DeMarines* v. *KLM Royal Dutch Airlines*, 580 F. 2d 1193 (CA3 1978) (contradictory evidence on whether pressurization was normal). See also *Weintraub* v. *Capitol International Airways, Inc.*, 16 CCH

Av. Cas. 18,058 (N. Y. Sup. Ct., 1st Dept., 1981) (plaintiff's testimony that "sudden dive" led to pressure change causing hearing loss indicates injury was caused by an "accident"). But when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply. The judgment of the Court of Appeals in this case must accordingly be reversed.

We recognize that any standard requiring courts to distinguish causes that are "accidents" from causes that are "occurrences" requires drawing a line, and we realize that "reasonable [people] may differ widely as to the place where the line should fall." *Schlesinger* v. *Wisconsin*, 270 U. S. 230, 241 (1926) (Holmes, J., dissenting). We draw this line today only because the language of Articles 17 and 18 requires it, and not because of any desire to plunge into the "Serbonian bog" that accompanies attempts to distinguish between causes that are accidents and injuries that are accidents. See *Landress* v. *Phoenix Mutual Life Ins. Co.*, 291 U. S., at 499 (Cardozo, J., dissenting). Any injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger. Until Article 17 of the Warsaw Convention is changed by the signatories, it cannot be stretched to impose carrier liability for injuries that are not caused by accidents. It remains "[o]ur duty . . . to enforce the . . . treaties of the United States, whatever they might be, and . . . the Warsaw Convention remains the supreme law of the land." *Reed*, 555 F. 2d, at 1093.

Our duty to enforce the "accident" requirement of Article 17 cannot be circumvented by reference to the Montreal Agreement of 1966. It is true that in most American cases the Montreal Agreement expands carrier liability by requiring airlines to waive their right under Article 20(1) of the Warsaw Convention to defend claims on the grounds that

they took all necessary measures to avoid the passenger's injury or that it was impossible to take such measures. Because these "due care" defenses are waived by the Montreal Agreement, the Court of Appeals and some commentators have characterized the Agreement as imposing "absolute" liability on air carriers. See Lowenfeld & Mendelsohn, 80 Harv. L. Rev., at 599. As this case demonstrates, the characterization is not entirely accurate. It is true that one purpose of the Montreal Agreement was to speed settlement and facilitate passenger recovery, but the parties to the Montreal Agreement promoted that purpose by specific provision for waiver of the Article 20(1) defenses. They did not waive other provisions in the Convention that operate to qualify liability, such as the contributory negligence defense of Article 21 or the "accident" requirement of Article 17. See *Warshaw*, 442 F. Supp., at 408. Under the Warsaw Convention as modified by the Montreal Agreement, liability can accordingly be viewed as "absolute" only in the sense that an airline cannot defend a claim on the ground that it took all necessary measures to avoid the injury. The "accident" requirement of Article 17 is distinct from the defenses in Article 20(1), both because it is located in a separate article and because it involves an inquiry into the nature of the event which *caused* the injury rather than the care taken by the airline to avert the injury. While these inquiries may on occasion be similar, we decline to employ that similarity to repeal a treaty provision that the Montreal Agreement on its face left unaltered.

Nor can we escape our duty to enforce Article 17 by reference to the equation of "accident" with "occurrence" in Annex 13 to the Convention on International Civil Aviation. The definition in Annex 13 and the corresponding Convention expressly apply to aircraft accident *investigations*, and not to principles of liability to passengers under the Warsaw Convention. See B. Cheng, The Law of International Air Transport 106–165 (1962).

Finally, respondent suggests an independent ground supporting the Court of Appeals' reversal of the summary judgment against her. She argues that her original complaint alleged a state cause of action for negligence independent of the liability provisions of the Warsaw Convention, and that her state negligence action can go forward if the Warsaw liability rules do not apply. Expressing no view on the merits of this contention, we note that it is unclear from the record whether the issue was raised in the Court of Appeals. We leave the disposition of this claim to the Court of Appeals in the first instance. See *Hoover* v. *Ronwin*, 466 U. S. 558, 574, n. 25 (1984).

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE POWELL took no part in the consideration or decision of this case.