Ruben **PADILLA**, Plaintiff,

v.

**OLYMPIC AIRWAYS**, Defendant.

No. 89 Civ. 7340 (WCC).

United States District Court,
S.D. New York.

June 10, 1991.

Alan H. Buchsbaum, New York City, for plaintiff.

Condon & Forsyth, New York City (Stephen J. Fearon, Diane Westwood Wilson, John S. McGowan, of counsel), for defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This is an action by plaintiff Ruben Padilla ("Padilla") to recover damages for personal injuries sustained by him on about October 19, 1987, while a passenger aboard defendant Olympic Airways ("Olympic" or "O.A.") Flight 411 en route from Athens, Greece, to New York City. Plaintiff seeks damages for lost earnings together with relief for past and future pain and suffering. Although conceding that plaintiff was injured aboard Olympic Flight 411, defendant denies any liability therefor.

On January 7, 1991, a one-day non-jury trial was held before me on the issues of

defendant's liability and plaintiff's damages. The following constitute my findings of fact and conclusions of law pursuant to Rule 52 Fed.R.Civ.P.

## BACKGROUND

The accident in question occurred during "international transportation" and therefore is subject to certain provisions of the Warsaw Convention, 49 U.S.C. § 1502, as modified by the Montreal Agreement, Agreement CAB 18900 (1966).[1] Plaintiff's claim, initially instituted in the Supreme Court, State of New York, was removed to this Court pursuant to the Foreign Sovereign Immunities Act of 1976, 28 U.S.C.A. § 1441(d). As defendant is a "foreign state" as defined in 28 U.S.C.A. § 1603(a), this action was tried without a jury.

On October 19, 1987, defendant's flight O.A. 411, departed Athens, Greece, at or about 1240 hours for New York City. Plaintiff was aboard as a passenger seated in coach class at the rear of the airplane and forward of the coach class lavatories. Plaintiff, a merchant mariner, had left the M/V FALCON CHAMPION, on which he served as a Steward/Baker, after a 69–day tour of duty at sea. Deposition of Ruben Padilla ("Padilla Dep.") at 8. On October 18, 1987, plaintiff worked until 8:00 p.m. aboard the M/V FALCON CHAMPION. After completing his shift, plaintiff slept for three hours, from 9:00 p.m. until 12:00 a.m. Plaintiff signed off duty on the M/V FALCON CHAMPION at 1:00 a.m., October 19, 1987. On October 19, 1987, plaintiff travelled to Piraeus, Greece and then onward to Athens, where he boarded Olympic Flight 411. *Id.* at 7–8.

At the airport in Athens, shortly prior to boarding Olympic Flight 411, plaintiff consumed four cans of beer. *Id.* at 11. Jose Quinones, a merchant mariner travelling with Padilla, testified that he was with plaintiff at all times while at the Athens Airport and that at no time prior to boarding the flight did plaintiff appear to be intoxicated. Deposition of Jose Quinones ("Quinones Dep.") at 8, 9. Approximately one-half hour after departing Athens, the cabin crew began serving drinks which included cans of Amstel beer free of charge. Plaintiff obtained and drank 2 or 3 cans of beer before lunch, 2 cans of beer with his lunch, and 3 or 4 cans of beer after lunch. Padilla Dep. at 23–24. Plaintiff has no recollection of eating from the time of dinner aboard the M/V FALCON CHAMPION on October 18, 1987, until the meal served aboard Olympic Flight 411 on October 19, 1987, approximately 14 hours later.

Plaintiff, some time after drinking his last can of beer, stood up to go to one of the aft lavatories. On his way to the lavatory he claims to have felt "dizzy"—a condition which he testified was caused by his being intoxicated. Plaintiff remembers that upon reaching the lavatory he fell and was rendered unconscious. Padilla Dep. at 26–27.

Jose Quinones, who was not seated with plaintiff during the flight and who did not see plaintiff fall, testified that he found plaintiff on the floor complaining of severe pain in the area of his left elbow. Quinones Dep. at 14, 22. Although there is no evidence that he saw plaintiff drink more than one beer during the flight, Quinones testified that plaintiff was drunk at the time of the accident. *Id.* Quinones assisted in escorting plaintiff to a seat after the incident and noticed that plaintiff's shoelaces were untied. Quinones Dep. at 16–17.

George Koliavasilis, flight attendant in charge of the coach section where plaintiff had been seated, testified that the two flight attendants assigned to his coach class section served free beer to the passengers. Koliavasilis testified that Olympic flight attendants avoid serving alcoholic beverages to passengers who appear to be

---

**1.** "The application of the Warsaw Convention to any damages claim is determined by Article 1 of the Convention and the transportation contract, ... the passenger ticket." *Rabinowitz v. Scandinavian Airlines,* 741 F.Supp. 441, 443 (S.D.N.Y. 1990). In this action it is undisputed that the passenger ticket issued to plaintiff provided for international transportation within the meaning of Article 1(2) of the Warsaw Convention. Since the places of origin and destination, namely Athens and New York, are "situated within the territories of two High Contracting Parties," the transportation is "international" as defined under the Warsaw Convention.

getting intoxicated and that they may refuse further alcoholic beverage service to any passenger whom they know is intoxicated. Deposition of George Koliavasilis ("Koliavasilis Dep.") at 38–41. When asked whether he had seen how much alcohol plaintiff had consumed before the incident, Koliavasilis testified that he had seen plaintiff with only one can of beer. *Id.* at 63.

Koliavasilis claims to have seen plaintiff walking to the lavatory immediately before the incident. He testified that plaintiff did not appear to have any difficulty walking. *Id.* at 52. Koliavasilis did not see plaintiff fall. Koliavasilis asserts that the lighting in the lavatory was good and that there was no water on the floor. *Id.* at 65–66.

When the aircraft landed at JFK Airport plaintiff was transported by ambulance to the airport's medical office where X-rays disclosed a dislocated left elbow. Plaintiff was then sent by ambulance to the Peninsula General Hospital where further X-rays disclosed posterior dislocation of the left radius and ulna with evidence of several small avulsion fractures. Also disclosed was a fracture of the left coranoid process.

Plaintiff's left elbow was in a posterior splint for approximately three months. He was declared fit for duty on January 12, 1988. Since being declared fit for duty plaintiff has returned to his work as a merchant mariner and has undergone no further medical treatment to date. Plaintiff complains of pain in the left elbow, especially in changing weather. He claims weakness in the left arm which prevents him from lifting anything heavy with that arm. Plaintiff's medical expert testified that plaintiff may have some arthritic changes developing within that elbow joint.

## DISCUSSION

Plaintiff proceeds in this case solely under the terms of the Warsaw Convention and not on any common law claim. Transcript at 67, 69. Under the Warsaw Convention, if a passenger proves that alleged injuries were proximately caused by an "accident," the carrier may be liable without proof of fault.

The circumstances under which a carrier may be liable to its passengers in international transportation are specified in Article 17 of the Warsaw Convention:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

The Warsaw Convention does not itself define the term "accident". The controlling interpretation is found in *Air France v. Saks*, 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985):

[L]iability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger. This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries.... [W]here there is contradictory evidence, it is for the trier of fact to decide whether an "accident" as here defined caused the passenger's injury.... But when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply.

470 U.S. at 405–06, 105 S.Ct. at 1345.

■ Plaintiff may only recover if he proves that (1) an "accident" within the meaning of Article 17 occurred on the aircraft and (2) the accident proximately caused the injury. *Saks*, 470 U.S. at 398, 105 S.Ct. at 1341–42. The accident must be distinct from the injury. A court applying Article 17 must distinguish between an accident which is the cause of the injury and an injury which is itself an accident. *See Saks*, 470 U.S. at 399, 105 S.Ct. at 1342.

Plaintiff testified that he deliberately consumed between seven and nine beers while on board Olympic Flight 411. Plain-

tiff argues that his falling to the plane's floor was caused by defendant's employees permitting plaintiff to consume unlimited quantities of beer at a time when those employees knew or should have known that to do so would expose plaintiff to danger and harm. Plaintiff asserts that in serving to him an unlimited volume of alcoholic beverages, defendant's employees violated defendant's rules with respect to making such beverages available to passengers who might be injured thereby. Plaintiff argues that the injuries sustained by him did not occur during the course of a routine or normal flight because permitting and/or causing plaintiff to become intoxicated was an obvious deviation from the norm.

In order to succeed on this theory, plaintiff must prove that the continued service of alcohol to him during the flight was an "unusual or unexpected event." The Second Circuit has noted that the consumption of alcohol during travel, in and of itself, is not an unusual occurrence. *German–Bey v. National R.R. Passenger Corp.*, 703 F.2d 54, 55 (2d Cir.1983). There is no evidence that Olympic was aware of Padilla's alleged intoxication. Plaintiff has not established that he requested the seven to nine beers from one flight attendant or that when he spoke to any of the flight attendants serving his section of coach class, if he spoke to them at all, he manifested that he was so intoxicated that he should be refused further alcohol.[2] Moreover, Koliavasilis testified that he observed nothing abnormal in Padilla's gait or carriage. Given these circumstances, plaintiff

has not established that the Olympic employees knew or should have known that to continue to serve Padilla alcoholic beverages was to expose him to danger or that Olympic's service of alcohol to him was anything but normal and routine.

Plaintiff has not sustained his burden of proving that he was injured as a result of an "accident" within the meaning of Article 17 or as defined by the Supreme Court in the *Saks* decision. 470 U.S. 392, 105 S.Ct. 1338. No unusual or unexpected event occurred before plaintiff collapsed in the lavatory. Moreover, the evidence, based on plaintiff's admissions, suggests that the injury sustained by plaintiff was not caused by an "accident" external to him but by plaintiff's own internal reaction to his voluntary intoxication.

Defendant Olympic Airlines is not liable for plaintiff's injuries under the terms of the Warsaw Convention.

## CONCLUSION

Plaintiff has failed to establish by a preponderance of the evidence that an "accident" occurred within the meaning of the Warsaw Convention and thus has failed to establish a right to recover from Olympic Airlines. Judgment shall therefore be entered in favor of defendant. Each side shall bear its own costs.

SO ORDERED.

---

**2.** Plaintiff asserts that if this Court is to decide whether plaintiff was visibly intoxicated while aboard the plane, Quinones' conclusion that plaintiff was drunk is determinative because defendant chose not to present before the Court the Olympic cabin attendants who may have been able to testify as to plaintiff's condition when being served. Plaintiff claims that, applying an absent witness inference with respect to Koliavasilis and/or other cabin attendants, the Court should infer that their testimony would confirm that of Quinones that plaintiff was visibly intoxicated.

Pursuant to a notice of deposition, Olympic produced Koliavasilis in New York as a party witness and provided plaintiff's counsel with a full opportunity to question him at that time. Koliavasilis resides in Marcopoulo, Greece.

Plaintiff never requested that Olympic produce Koliavasilis at trial. *See* Post–Trial Supplemental Proposed Findings of Fact and Conclusions of Law of Defendant at ¶ 10. The Court therefore may consider Koliavasilis' deposition in full. Accordingly, an absent witness inference with regard to Koliavasilis is inappropriate.

So far as the record shows, plaintiff never attempted to take the depositions of the other cabin attendants. Olympic's production of Koliavasilis, however, suggests that it would also have produced the other attendants for examination by plaintiff at his request. Where discovery is available but not employed, plaintiff ought not to be permitted to resort to a necessarily speculative inference. The Court therefore declines to draw a missing witness inference against Olympic.