Eva **FOXWORTH,** Plaintiff,

v.

**PERMANENT MISSION OF THE REPUBLIC OF UGANDA TO the UNITED NATIONS,** Defendant.

**No. 91 Civ. 4882 (MBM).**

United States District Court, S.D. New York.

July 6, 1992.

Peter S. Gordon, Gordon & Gordon, Forest Hills, N.Y., for plaintiff.

Robert F. Van Lierop, Otto G. Obermaier, U.S. Atty., S.D.N.Y., Manvin S. Mayell, Asst. U.S. Atty., New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Defendant, the Permanent Mission of the Republic of Uganda to the United Nations, moves to vacate a writ of execution entered against its bank account by the United States Marshal for this District. For the reasons set forth below, defendant's motion is granted.

### I.

On July 28, 1989, plaintiff, then 80 years old, was struck by an automobile owned by defendant and suffered fractures of the left tibia and fibula. As a result of her injuries, she is unable to care for herself and requires the assistance of a full-time home-care attendant. (Report of Magistrate Judge Lee at 4–5)

Plaintiff filed this suit on July 18, 1991 and a default judgment was entered on September 27, 1991. The matter then was referred to Magistrate Judge Lee for a determination of damages. Following an inquest at which defendant failed to appear, Magistrate Judge Lee recommended that plaintiff be awarded damages in the amount of $250,000 plus statutory costs. Receiving no objection from defendant, this Court entered judgment in the amount of $250,120 on February 25, 1992.

Defendant failed to satisfy the judgment. As a result, on May 26, 1992 a writ of execution was entered against a bank account held by defendant at the Chemical Bank branch located at One United Nations Plaza in New York City.

Evidently, the attachment of its bank account convinced defendant that plaintiff's claim and the proceedings before this Court warranted its attention. On July 2, 1992, in its first appearance in this matter, defendant moved to vacate the writ of execution. James Boliba Baba, Ambassador/Deputy Permanent Representative of the Republic of Uganda to the United Nations, claims that the Chemical Account, the balance of which now is less than the outstanding judgment, is used for wages, allowances and travel expenses for Mission personnel and that a continued freeze would force the Mission to cease operations. (Baba Aff. ¶¶ 1, 4, 7) The United States Department of State, in support of defendant, asserts that attachment of the account is in violation of obligations owed to the government of Uganda and the United Nations by the United States because it impairs defendant's ability to perform its official functions. (Wolf Aff. ¶ 4)

### II.

■ The United States is signatory to treaties which obligate it to give the missions and representatives of United Nations member states the facilities and legal protection necessary for performance of their diplomatic functions. Such treaties are "equal in stature and force" to the laws of the United States. *Sulewski v. Federal Express Corp.*, 933 F.2d 180, 182 (2d Cir. 1991); *see also In re Air Crash Disaster at Warsaw, Poland,* 705 F.2d 85, 87 (2d Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 147, 78 L.Ed.2d 138 (1983).

One of them, the United Nations Charter, ratified by the United States on August 8, 1945, provides:

Representatives of the Members of the United Nations and officials of the Organization shall similarly enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connection with the Organization.

U.N. Charter art. 104, para. 2. Following ratification, President Truman invited the United Nations to establish its permanent seat in the United States. On June 26, 1947, after the General Assembly decided on New York City as the site for its permanent headquarters, the United Nations Headquarters Agreement was entered by the United States and the United Nations. That agreement provides that representatives of the member states shall enjoy "the same privileges and immunities ... as [the United States] accords to diplomatic envoys accredited to it." U.N. Headquarters Agreement art. V, sect. 15. This grant of immunity echoed that of the 1946 Convention on the Privileges and Immunities of the United Nations, February 13, 1946, 21 U.S.T. 1418, 1428, which states that representatives of United Nations members shall enjoy "such ... privileges, immunities and facilities ... as diplomatic envoys enjoy."

The Vienna Convention on Diplomatic Relations, ratified by the United States in 1961, sets forth the privileges and immunities to which representatives of United Nations members are entitled. Article 25 of the Convention provides:

The receiving State shall accord full facilities for the performance of the functions of the mission.

Vienna Convention, Apr. 18, 1961, 23 U.S.T. 3227, 3238. In addition, the preamble states that the purpose of the Vienna Convention is to "assure the efficient performance of the functions" of the missions.

■ Interpretation of a treaty begins with its text and the context in which the language is used. *Eastern Airlines, Inc. v. Floyd,* — U.S. —, 111 S.Ct. 1489, 1493, 113 L.Ed.2d 569 (1991); *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 699, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988). If ambiguous, a court then considers "the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Air France v. Saks,* 470 U.S. 392, 396, 105 S.Ct. 1338, 1340–41, 84 L.Ed.2d 289 (1985). When the parties agree as to the meaning of an ambiguous provision that interpretation should be enforced absent strong evidence to the contrary. *Sumitomo Shoji America, Inc. v. Avagliano,* 457 U.S. 176, 185, 102 S.Ct. 2374, 2379–80, 72 L.Ed.2d 765 (1982).

■ Here, two of the parties to the relevant treaties, the United States, as represented by the Department of State, and the government of Uganda, as represented by its permanent mission to the United Nations, agree that attachment of the bank account constitutes a violation of both the United Nations Charter and the Vienna Convention. (Wolf Aff. ¶ 4; Baba Aff. ¶ 6) This is a reasonable interpretation consistent with the language of the treaties. In the case at hand, attachment of defendant's account by the United States Marshal will, according to defendant, force it to cease operations. This is contrary to the obligation of the United States to provide defendant the immunities necessary for operation under the United Nations Charter and its obligation to accord "full facilities" for the performance of the mission's functions under the Vienna Convention. *See Liberian Eastern Timber Corp. v. Government of the Republic of Liberia,* 659 F.Supp. 606, 608 (D.D.C.1987).

Defendant, however, is admonished that the holding of this opinion is quite narrow; that is, it holds only that attachment of defendant's bank account is in violation of the United Nations Charter and the Vienna Convention because it would force defendant to cease operations. Moreover, defendant should not conclude that because I have granted its motion that I condone either its cavalier attitude toward the serious injuries it has inflicted on an 80 year-old woman or its selective disregard for the laws of the United States and the jurisdiction of this nation's courts.

The treaties discussed above do not immunize defendant from being haled into court to answer for its tortious conduct. Although generally immune from suit under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602–1611, foreign states are subject to the jurisdiction of state and federal courts in cases where damages are sought for personal injury or death caused by the tortious act of that foreign state or any official or employee of that foreign state. 28 U.S.C. § 1605(a). Thus, the default judgment entered in this case is valid and may be vacated only if the requirements of Fed.R.Civ.P. 60(b) are satisfied. *See* Fed.R.Civ.P. 55(c).

Because attachment of defendant's account will force defendant to cease operations, defendant's motion is granted. Defendant is reminded, however, that there remains an outstanding judgment pursuant to which it is liable to plaintiff in the amount of $250,120.

SO ORDERED.