**Raviv LAOR, Plaintiff,**

v.

**AIR FRANCE, Defendant.**

**No. 97 Civ. 5284 (MBM).**

United States District Court, S.D. New York.

Dec. 17, 1998.

Michael T. Wolin, New York City, for plaintiff.

Randal R. Craft, Jr., Peter A. Frazier, Haight Gardner Holland & Knight, a Law Office of Holland & Knight, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Raviv Laor sues Compagnie Nationale Air France ("Air France") for the injuries he allegedly sustained when he was forcibly pulled from a lavatory by a flight attendant while a passenger aboard an international flight. In this current motion, defendant requests a declaration that the availability of punitive damages is governed by French law. At this juncture, Air France does not pursue its argument that plaintiff's state law tort claims are preempted by the Warsaw Convention, 49 U.S.C.A. § 40105. Even so, plaintiff asserts that the Warsaw Convention is inapplicable to his claim and that he is, therefore, free to raise state law claims and seek whatever punitive damages permitted under New York law. As explained below, the Warsaw Convention provides the basis for plaintiff's claims and, because the Warsaw Convention allows no

recovery for punitive damages, plaintiff's claims for punitive damages are barred.

## I.

The facts, drawn principally from plaintiff's complaint, are as follows. On May 19, 1997, plaintiff, a resident of New York, was on board Air France Flight # 004 flying from Paris to Newark, New Jersey. Approximately 40 minutes into the flight, plaintiff left his seat to use the lavatory. (Compl.¶ 6) Shortly thereafter, a smoke alarm was sounded in the lavatory quadrant where plaintiff was located. In response to the alarm, a flight attendant unscrewed the lavatory lock from the outside and began opening the door of the lavatory occupied by plaintiff. (Frazier Aff.Ex. 1, ¶¶ 9–10) It is strongly contested whether plaintiff was then pulled from the lavatory in a state of undress or whether the flight attendant merely opened the door to confirm that the occupant was not smoking and in no danger. (*Id.*; Compl. ¶ 6) Plaintiff claims that upon leaving the lavatory, and for the remainder of the flight, he was forced to suffer malicious comments and ongoing verbal attacks that caused him increasing humiliation as well as physical and mental distress. (Compl.¶ 7)

Plaintiff filed a complaint in Supreme Court, New York County, on June 17, 1997, asserting two causes of action based on state claims of intentional tort: (1) assault and battery (Compl.¶¶ 1–9), and (2) trespass. (Compl.¶¶ 10–13) On the first claim, plaintiff seeks $3 million in damages and an additional $3 million in punitive damages. On the second claim, he seeks $3 million plus treble damages under New York law. (Compl. p. 4)

■ On July 18, 1997, Air France removed the case to this court citing original jurisdiction conferred by the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1602–1611. Majority ownership of Air France by the Government of France qualifies the carrier as an "agency or instrumentality of a foreign state," 28 U.S.C. § 1603, and, therefore, the FSIA is this court's sole basis for jurisdiction. (Gabel Aff. ¶ 8) As noted, Air France argues that French law rather than New York law governs the availability of punitive damages.

## II.

■ As a threshold matter, it must be determined if plaintiff's state law claims are preempted by the Warsaw Convention. All state law claims that fall within the scope of the Warsaw Convention are preempted. *In Air Disaster at Lockerbie, Scotland,* 928 F.2d 1267, 1273 (2d Cir.1991) (*"Lockerbie I "*); *see also Fishman v. Delta Air Lines, Inc.,* 938 F.Supp. 228 (S.D.N.Y.1996) (holding that state law claims were preempted because alleged injuries were caused by an "accident" within the meaning and scope of the Warsaw Convention), *aff'd,* 132 F.3d 138 (2d Cir. 1998).

Pursuant to Article 1(1), the Warsaw Convention applies "to all international transportation of persons, baggage or goods performed by aircraft for hire." 49 U.S.C. § 40105. The circumstances under which a carrier may be liable to its passengers in international transportation are specified in Article 17 of the Warsaw Convention:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

*Id.* The principal issue at this point is whether the incident that led to plaintiff's alleged injuries is an "accident" for the purposes of Article 17.

The Warsaw Convention contains no definition of the term "accident." The controlling interpretation is found in *Air France v. Saks,* 470 U.S. 392, 405–06, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985):

> [L]iability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger. This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries.

The Second Circuit has held that a "claim does allege an 'accident' if it arises from some inappropriate or unintended happenstance in the operation of the aircraft or airline." *Fishman v. Delta Air Lines, Inc.* 132 F.3d 138, 143 (2d Cir.1998).

In the case at hand, the smoke alarm was an unexpected occurrence and outside the control of the passenger, as was the flight attendant's unlocking of the lavatory door. This incident is not a "routine procedure of international air traffic," *Tsui Yuan Tseng v. El Al Israel Airlines, Ltd.,* 122 F.3d 99, 102 (2d Cir.1997), and is properly termed an accident under Article 17.

Plaintiff argues that the assault and battery, the intrusion on his privacy and the subsequent ridicule he suffered were not "accidents" but intentional torts. He cites several cases for the proposition that intentional torts are not covered by the Convention. *See Tseng,* 122 F.3d at 103–107 (holding that claims arising from a routine security check did not arise from an "accident" and that the Warsaw Convention was inapplicable); *Price v. British Airways,* No. 91 Civ. 4947, 1992 WL 170679 (S.D.N.Y.1992) (holding the Warsaw Convention to be inapplicable because a fist fight between passengers was not a characteristic risk of air travel); *Margrave v. British Airways,* 643 F.Supp. 510 (S.D.N.Y. 1986) (holding that injuries sustained by passenger forced to remain seated in a cramped position did not arise from an "accident"); *Padilla v. Olympic Airways,* 765 F.Supp. 835 (S.D.N.Y.1991) (holding that the injuries sustained by an intoxicated passenger who fell down in the aircraft's lavatory, were not injuries arising from an accident).

The cases plaintiff cites do not establish that a claim of intentional tort is not covered by the Warsaw Convention. Each of these cases is easily distinguished from the present action. In *Price,* one rationale for not finding the carrier liable pursuant to Article 17 was that no relation existed between the operation of the aircraft and the injuries plaintiff incurred during an altercation with another passenger. *See Price,* 1992 WL 170679, at *3. That is not the case here, because the sounding of a smoke alarm is a part of the aircraft's emergency operations, and injuries resulting from the alarm, or airline emergency procedures in response to the alarm, have a direct relationship to aircraft operations.

When the *Padilla* and *Tseng* courts determined that there was no "accident" to trigger Article 17 liability, they focused on the routine nature of the incidents that led to injury—the serving of alcohol on board the aircraft that caused Padilla's intoxication and the pre-boarding security check that led to Tseng's claim of emotional distress. By contrast, a smoke alarm does not routinely sound during the operation of an aircraft. The opening of a locked lavatory door cannot be described as anything other than "unexpected and unusual." As previously stated, plaintiff has cited no case or fact contradicting the conclusion that his alleged injuries flowed from an on-board "accident."

Plaintiff contends that the bulk of his injuries did not arise from the smoke alarm and the immediate crew response, but rather from the post-alarm humiliation endured as a result of the alleged misconduct of the flight crew. (*See* Compl. ¶¶ 9, 12; *see also* Frazier Aff.Ex. 2, at 79) Nonetheless, the event that triggered all plaintiff's claims is the sounding of the smoke alarm and the immediate response of the flight attendant. The precipitating cause, the "accident," cannot be artificially separated from its results in order to avoid the Warsaw Convention. *See Fishman,* 132 F.3d at 141–142. It is necessary to show that only one chain in the causal link is unusual or unexpected for all injuries alleged to be covered by the Warsaw Convention. *See Saks,* 470 U.S. at 406, 105 S.Ct. 1338. Because plaintiff's alleged injuries were caused by an "accident" within the meaning of the Warsaw Convention, the Convention provides the exclusive remedy and the state law claims are preempted.

### III.

Punitive damages are not available in an action arising under the Warsaw Convention. *See Pescatore v. Pan Am. World Airways, Inc.,* 97 F.3d 1, 14 (2d Cir.1996) (citing *Lockerbie I,* 928 F.2d at 1280–88). That this action claims willful misconduct

under Article 25, which bars the carrier from relying on the Convention for a limitation of liability, does not in itself create a separate claim for punitive damages. Article 25(1) & (2), 49 U.S.C. § 40105, specifically provides that,

> the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his [or his agent's] willful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to willful misconduct.

A finding of willful misconduct has been held to negate the due care exclusion from liability contained in Article 20 and the monetary limitation of $75,000 in Article 22. *See Lockerbie I*, 928 F.2d at 1286; *Grey v. American Airlines*, 227 F.2d 282, 285 (2d Cir.1955). However, Article 25 has not been read to expand recovery to include punitive as well as compensatory damages. *See In re Air Crash Disaster at Gander, Newfoundland, Dec. 12, 1985*, 684 F.Supp. 927, 932 (W.D.Ky. 1987) (finding that Article 25 is "most reasonably interpreted as [an] exception ... to the limitations on the recovery of compensatory damages within the Convention, not as authority for the recovery of punitive damages" (citing *O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842, 853 (2d Cir.1984) (holding that the Warsaw Convention fixes the available remedies under Article 17))). This interpretation is consistent with *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 227, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996), where the Supreme Court emphasized that recovery under the Warsaw Convention is limited to damages that compensate for harm actually incurred. *See also Lockerbie I*, 928 F.2d at 1288 (holding that only compensatory damages are available under the Warsaw Convention).

Plaintiff contends that the Warsaw Convention cannot apply to intentional torts because a defendant could then "evade the full spectrum [of] legal consequences that which [*sic* ] flows from that tort." (Wolin Aff. in Opp'n ¶ 15) Plaintiff's argument is misdirected. It is the function of Congress and not of this court to decide whether compensatory damages provide adequate deterrence for willful misconduct in international travel. *See Zicherman*, 516 U.S. at 231, 116 S.Ct. 629 (noting it is the function of Congress, not of the Court, to decide whether the Warsaw Convention provides inadequate deterrence).

\*     \*     \*     \*     \*     \*

For the reasons stated above, the Warsaw Convention is found to be the basis of plaintiff's claims and, plaintiff's claims for punitive damages are stricken.

SO ORDERED.