UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ELMER D. HIPOLITO, Administrator of
the Estate of Augusto Samson
Hipolito, Deceased,
                    *Plaintiff-Appellant,*

v.

NORTHWEST AIRLINES, INCORPORATED,
                    *Defendant-Appellee.*

⎫
⎬
⎭

No. 00-2381

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(CA-00-186-2)

Argued: June 7, 2001

Decided: July 31, 2001

Before WILKINS and WILLIAMS, Circuit Judges, and
Andre M. DAVIS, United States District Judge for the
District of Maryland, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Elizabeth Lida Montagna, HARLAN & FLORA, P.C.,
Norfolk, Virginia, for Appellant. Michael Wayne Kerns, DOMBR-
OFF & GILMORE, P.C., Washington, D.C., for Appellee. **ON
BRIEF:** Thomas J. Harlan, HARLAN & FLORA, P.C., Norfolk, Vir-

ginia, for Appellant. Thomas B. Almy, James A. Eastwood, DOMBR-
OFF & GILMORE, P.C., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

This is an appeal from the District Court's grant of summary judg-
ment to Northwest Airlines, Inc. (Northwest), dismissing a claim that
the on-board death of one of its passengers, Augusto Hipolito, was
caused by his asthma condition and was not due to an "accident"
within the contemplation of the Warsaw Convention. We affirm.

I.

The case arose from the death of Mr. Hipolito on board Northwest
Flight 70 from Osaka, Japan, to Detroit, Michigan, on March 17,
1998. Hipolito was 74 years old and suffered from chronic obstructive
pulmonary disease. He traveled with two nebulizers, one battery-
powered and the other a plug-in unit, and with more than one inhaler.

Several hours into the flight, Hipolito experienced breathing diffi-
culties and, because his batteries were dead, he took his plug-in nebu-
lizer to the lavatory to administer himself aerosolized medicine to
relieve his condition. The electrical outlet in the lavatory delivered
115 volts of electricity; it was designed to shut off if one attempted
to power an incompatible appliance. Hipolito's nebulizer caused the
lavatory outlet to shut off and he was unable to administer medica-
tion. He returned to his seat and his wife, Norma Hipolito, summoned
a flight attendant. The flight attendant gave him a bottle of oxygen,
but he was unable to get any oxygen from it so he cast it aside.

The flight attendant announced that the assistance of a doctor was
needed and three doctors came forward. Two of them, Drs. Kevin

Mitts and Timothy Mologne, attended to Hipolito. They first attempted to administer Hipolito's inhaler (a bronchodilator) but because he could not generate a deep enough breath, it was of no benefit. The doctors then moved him to the front of the aircraft.

Dr. Mitts asked a flight attendant to take notes recording the time when various interventions were administered. The contemporaneous emergency incident form the doctors completed on the date of Hipolito's death records that the patient complained of shortness of breath. (J.A. 35.) The doctors began administering oxygen via a face mask at 12:45 p.m. They recorded that his breathing was "shallow with poor air exchange and coarse rhonchi [upper respiratory sounds] and wheezes." (*Id.*) The doctors recorded that Hipolito collapsed at 1:00 p.m., ceasing respiration, losing consciousness and in cardiac arrest. The doctors began two-person CPR in an attempt to revive him. Dr. Mitts injected 0.1 cc of 1:1000 epinephrine into Hipolito's jugular vein after several minutes of CPR. He administered two more such injections with no response. When there was still no pulse 28 minutes later, Hipolito was pronounced dead.

Testifying on deposition, sometimes through an interpreter, sometimes in English herself, Norma Hipolito recalled that when her husband returned from the lavatory his face was pale white. (J.A. 115.) She summoned a male flight attendant who brought an oxygen bottle; when her husband tried to use it he could not get it to work and he discarded it on the seat next to him. (J.A. 101.) She then showed the plug-in nebulizer to a flight attendant who went to see whether there was an outlet on board that could power it. Norma Hipolito followed the flight attendant. (J.A. 96, 101-02.)

When Norma Hipolito returned, the doctors were moving her husband forward and they lay him on the floor after a while. She did not ask the doctors any questions. She stated on deposition that the doctors did not administer oxygen to her husband while he was lying down (J.A. 112.), but she observed that the doctors had a mask over her husband's face.

## II.

As summarized below, the district court granted Northwest's motion for summary judgment. Thereafter, appellant filed a "Petition

for Rehearing" (which the district court treated as a motion for reconsideration), arguing that the court had erred in failing to treat an unsworn opinion letter, from a physician retained for purposes of the litigation, as part of the summary judgment record. The district court denied the motion for reconsideration, but also stated that even if the document were to be treated as if it were a part of the summary judgment record, the result would be the same. (J.A. 201-11.)

### III.

The parties agree that the Warsaw Convention applies to this case. Under Article 17 of the Convention, air carriers are "liable for damage sustained in the event of the death or wounding of a passenger . . . if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Warsaw Convention Art. 17. The Convention "established a presumption that air carriers are liable for damage sustained by passengers as a result of the carrier's negligent conduct." *Floyd v. Eastern Airlines, Inc.*, 872 F.2d 1462, 1467 (11th Cir. 1989), *rev'd on other grounds*, 499 U.S. 530 (1991).

Recovery of damages under Article 17 requires that a claimant establish that an "accident" occurred. Warsaw Convention Art. 17; *Air France v. Saks*, 470 U.S. 392, 407 (1985). The Supreme Court has defined "accident" as "an unexpected or unusual event or happening that is external to the passenger," *id.* at 405, which causes an injury. The *Saks* Court held that this "definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injury." *Id.* The Court cited with approval decisions from "lower courts in this country [that] have interpreted Article 17 broadly enough to encompass torts committed by terrorists or fellow passengers." *Id.* "But," the *Saks* Court held, "when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply." *Id.* at 406. We have observed that "'accident' refers to the cause of injury rather than the injury itself." *Sakaria v. Trans World Airlines*, 8 F.3d 164, 170 (4th Cir. 1993), *cert. denied*, 511 U.S. 1083, 114 S. Ct. 1835 (1994).

The District Court ruled that because Norma Hipolito testified on deposition that the oxygen bottle the flight attendant brought her husband was empty, and Northwest presented no conflicting evidence, for the purposes of summary judgment, the bottle was deemed empty. (J.A. 164.) Also, despite Norma Hipolito's deposition testimony that she did not observe her husband receive oxygen, the court credited the documentary evidence showing that "[t]wo passengers on the plane, who happened to be doctors, began administering CPR to [Hipolito] *and provided him with oxygen.*" (*Id.*) (emphasis added).

Ultimately, the district court ruled that ". . . Northwest's failure to provide a cure to [Hipolito's] asthma attack, assuming it could have been cured," was not an accident under the terms of the Warsaw convention. (J.A. 168, 170.) The court reasoned that the "asthma attack was not an 'accident,' as it was not caused by an event external to . . . [Hipolito,]" but was instead an "internal reaction to the usual, normal, and expected operation of the aircraft. Further, . . . Northwest's failure to provide [Hipolito] with a full bottle of oxygen is not the type of external, unusual event for which liability is imposed under the Warsaw Convention." (J.A. 170.)

## IV.

We review *de novo* a district court's grant of summary judgment. *Chisolm v. UHP Projects, Inc.*, 205 F.3d 731, 734 (4th Cir. 2000). The district court's evidentiary ruling that the late-filed unsworn opinion letter was not part of the summary judgment record is reviewed for abuse of discretion. *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,* 71 F.3d 119, 126 (4th Cir. 1995); *Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 973 n.8 (4th Cir. 1990).

## V.

We have reviewed the record, briefs, and pertinent case law on this matter de novo, and we have had the benefit of oral argument. In addition, we have considered the authorities cited in the appellant's post-argument submission. Our careful review persuades us that the rulings of the district court were correct. Accordingly, we affirm the grant of summary judgment to Appellee on the reasoning set forth in

the district court's orders. *See Hipolito v. Northwest Airlines, Inc.*, Civil Action No. 2:00cv186 (September 26, 2000; October 25, 2000).

*AFFIRMED*