**Gordon T. CAREY, Jr., an individual, Plaintiff,**

v.

**UNITED AIRLINES, INC., a foreign corporation, Defendant.**

**No. CV–99–604–HU.**

United States District Court, D. Oregon.

Dec. 8, 1999.

Gordon T. Carey, Jr., Portland, OR, pro se.

Jonathan M. Hoffman, Brian K. Ruess, Martin, Bischoff, Templeton,Langslet & Hoffman, LLP, Portland, OR, for Defendant.

## OPINION AND ORDER

HUBEL, United States Magistrate Judge.

Plaintiff Gordon T. Carey, Jr. brings this diversity action against defendant United Airlines, Inc. for damages arising out of an incident between plaintiff and one of defendant's flight attendants while flying from Costa Rica to Los Angeles. Specifically, plaintiff brings claims of intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment. Defendant moves for summary judgment. I grant the motion.

## BACKGROUND

For the purposes of this motion, defendants do not dispute the facts alleged in the Complaint. Additionally, defendants rely on facts contained in an April 6, 1998, letter from plaintiff to the Chairman of the Board of defendant, and which plaintiff produced to defendant during the course of this litigation. Thus, for this motion, the following facts are undisputed.

In March 1998, plaintiff, his three daughters, and Sue Varnado, his female companion, flew from Portland to Costa Rica and back. On the return trip to Portland, plaintiff had two first class seats and three coach seats on a flight from Costa Rica to Los Angeles with a stop in Guatemala City. The assigned seats in coach were 8D, 8E, and 13D. Plaintiff had specifically requested the row 8 seats because row 8 is the bulkhead with extra leg room, and it is closest to first class. Plaintiff relied on his "premiere executive" status to reserve the row 8 seats.

Upon check-in, defendant's representative told plaintiff that his children, ages 7, 9, and 13, were too young to sit in row 8 on take-off and landing. Plaintiff indicated that he and Varnado would take those seats for take-off and landing and the children would sit in first class and the other coach seat. During the first leg of the flight from Costa Rica to Guatemala, plaintiff and Varnado sat in the row 8 seats. A representative of defendant arranged for plaintiff's daughter in row 13D to switch to a seat in row 9 so that she was just one row behind her family in the two row 8 seats.

After taking off from Guatemala, plaintiff and Varnado went to exchange seats with his two daughters in first class. At that time, a flight attendant named Alexis Jachnik blocked plaintiff's path and told him that she had already announced several times that coach passengers were not to enter the first class cabin. Plaintiff ex-

plained that he was switching seats. Jachnik told him that switching seats between coach and first class was unacceptable.

An exchange between plaintiff and Jachnik then occurred and Jachnik insisted that plaintiff's children could not sit in row 8 at any time, not just during take-off and landing. Plaintiff suggested that Jachnik ask a couple seated in row 9 if they would switch with plaintiff's children in row 8, allowing all of plaintiff's children to be in row 9 and resolving Jachnik's concern with the children being in row 8. Jachnik did so and the switch was made. Jachnik instructed plaintiff that he and Varnado had to stay in the first class seats and that they could not switch with those in coach.

During this portion of the flight, two of plaintiff's children began to suffer ear aches. One of the children came to plaintiff in first class seeking medicine for her pain. Jachnik warned plaintiff that his children could not come in the first class cabin. Plaintiff explained to Jachnik that his children were ill and that he was trying to provide comfort and medication. Jachnik made some reference to Federal Airline Administration (FAA) regulations.

Plaintiff's youngest daughter then walked from coach to first class seeking plaintiff's assistance. Jachnik reprimanded plaintiff again and told him that an FAA representative was on board who could arrest plaintiff because plaintiff's children were leaving coach and going into the first class cabin. Plaintiff believed he had no choice but to send his daughter back to her seat even though she was clearly in pain and was in tears.

Plaintiff asked Jachnik to identify the FAA representative. Plaintiff and the person who identified himself as an FAA representative then had a heated exchange which included insults and profanity. The person refused to show plaintiff his FAA identification.

Plaintiff contends that Jachnik later publicly humiliated him in front of the other first class passengers.

Plaintiff describes the events as "very upsetting." Exh. A to Ruess Affid. at p. 7.

In his Complaint, he alleges that defendant's acts caused him severe mental and emotional distress. Comp. at ¶¶ 6, 8, and 10. In his response to defendant's concise statement of facts, plaintiff states that he suffered "physical manifestations including nausea, cramps, perspiration, nervousness, tension, and sleeplessness." Pltf's Resp. at ¶ 15; *see also* Carey Affid. at ¶ 2 (adopting assertions in response as if fully reproduced in affidavit).

## STANDARDS

The court should grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). The court should resolve reasonable doubts about the existence of a material factual issue against the moving party. *Id.* at 631. The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. *Id.* at 630–31.

## DISCUSSION

Defendant argues that (1) the Warsaw Convention governs plaintiff's claims; (2) plaintiff has no claim under the Warsaw Convention because he did not suffer a "bodily injury caused by an accident"; (3) plaintiff has no claim under the Warsaw Convention even if there were an accident

because plaintiff cannot recover for purely mental distress injuries; (4) the Warsaw Convention is plaintiff's exclusive remedy and plaintiff's state law claims are precluded; and (5) plaintiff cannot escape the limitations of the Warsaw Convention by alleging willful misconduct on behalf of defendants. Plaintiff contends that his claim is not governed by the Warsaw Convention, that there was an accident, that emotional damages are recoverable, and that willful misconduct removes the applicable limitations. I will consider the arguments in turn.

## I. Applicability of the Warsaw Convention

■■■■ The Convention for the Unification of Certain Rules Relating to International Transportation by Air, commonly known as the Warsaw Convention ("Warsaw Convention" or "Convention") "is a multilateral treaty for the unification of certain rules relating to international transportation by air, concluded in Warsaw, Poland in 1929." *Alexander v. Pan Am. World Airways, Inc.,* 757 F.2d 362, 363 n. 1 (D.C.Cir.1985) (internal quotation omitted).[1] The purpose of the Convention was to limit the liability of air carriers. *In re Korean Air Lines Disaster of Sept. 1, 1983,* 932 F.2d 1475, 1484 (D.C.Cir.1991); *see also In re Air Disaster at Lockerbie, Scot. on Dec. 21, 1988,* 928 F.2d 1267, 1270 (2d Cir.1991) (two goals of Convention were to establish uniformity in the aviation industry and to limit air carriers' potential liability in the event of accidents). "The contracting states in 1929 believed that limitations on liability would promote the development of the fledgling commercial air industry by allowing the airlines to predict their exposure to monetary damages and thereby obtain needed capital and adequate insurance coverage." *Id.* The United States has been a signatory to the Convention since 1934. *Chendrimada v. Air–India,* 802 F.Supp. 1089, 1090 (S.D.N.Y.1992).

**1.** The text of the Convention is found at 49 Stat. 3000 and is reprinted in a note following

■■ The application of the Warsaw Convention to any damages claim is determined by Article 1 and the transportation contract which, in the transportation of passengers, is the passenger ticket. Article 1 includes within the scope of the Warsaw Convention's application, "all international transportation of persons, baggage, or goods performed by aircraft for hire." 49 Stat. 3014. Where transportation is "international" as defined in Article 1(2), the provisions of the Warsaw Convention apply and automatically govern the rights of the parties to an action for damages. *Rabinowitz v. Scandinavian Airlines,* 741 F.Supp. 441, 443 (S.D.N.Y.1990) (citing *Benjamins v. British European Airways,* 572 F.2d 913 (2d Cir.1978)).

Article 1(2) of the Warsaw Convention defines "international transportation" as:

any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention.

40 Stat. 3014.

■■ Travel is "international" within the Warsaw Convention definition when the passenger travels on a round trip ticket from the United States to another destination and back, because "the United States is a High Contracting Party to the Convention, and round trips originating in and going outside High Contracting Parties are international under the Convention, regardless of whether the intermediate destination is a High Contracting Party." *Alexander,* 757 F.2d at 363.

49 U.S.C. § 40105.

Here, plaintiff flew on a round trip ticket from the United States to Costa Rica and back. Plaintiff's trip meets the Warsaw Convention's definition of international travel, regardless of whether Costa Rica is a High Contracting Party, because the United States is such a party. Thus, the provisions of the Warsaw Convention apply and govern this action for damages by plaintiff against defendant.

## II. Accident

 Article 17 of the Convention makes air carriers liable for injuries sustained by a passenger "if the accident which caused the damages so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." *Air France v. Saks,* 470 U.S. 392, 394, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985) (quoting Article 17 of the Warsaw Convention). An airline "is liable to a passenger under the terms of the Warsaw Convention only if the passenger proves that an 'accident' was the cause of [the passenger's] injury." *Id.* at 396, 105 S.Ct. 1338.

 In *Saks,* the Supreme Court analyzed the original French text of the Convention in a case where the plaintiff suffered a hearing loss even though the aircraft's pressurization system operated normally. After examining the text and then the Convention's negotiating history, the Court concluded that an "accident" for purposes of Article 17, is an "unexpected or unusual event or happening that is external to the passenger." *Id.* at 405, 105 S.Ct. 1338. The Court cautioned, however, that this "definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Id.* The Court further explained that "when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident[.]" *Id.* at 406, 105 S.Ct. 1338. In cases where there is contradictory evidence, the trier of fact decides whether

an "accident" has caused the passenger's injuries. *Id.* at 405, 105 S.Ct. 1338.

Defendant argues that because plaintiff has not alleged that an accident occurred, plaintiff cannot state a claim under Article 17, regardless of the nature of his injuries. I disagree. This is not a motion to dismiss in which the Court assesses the adequacy of the Complaint's allegations. Rather, I must determine whether the facts as gleaned from the entire record, and viewed in a light most favorable to plaintiff, demonstrate that Jachnik's actions were an "accident" as that term is defined in *Saks.*

In a Second Circuit case involving acts by a flight attendant, the court held that the flight attendant's scalding of a child by applying an overly-hot compress to the child's ear, was an accident within the meaning of *Saks. Fishman v. Delta Air Lines, Inc.,* 132 F.3d 138, 141 (2d Cir. 1998).

In a relevant district court case, the court held that hot coffee spilled by a flight attendant was an accident as defined in *Saks. Diaz Lugo v. American Airlines, Inc.,* 686 F.Supp. 373, 375 (D.P.R.1988); *see also Tsevas v. Delta Air Lines, Inc.,* No. 97C0320, 1997 WL 767278, at *4 (N.D.Ill.1997) (service from flight attendants is characteristic of air travel and has a relation to the operation of the aircraft); *Gonzalez v. TACA Int'l Airlines,* No. 91-0175, 1992 WL 142399, at *2 (E.D.La.1992) (spilled food and service of beverage containing a piece of plastic were "accident" within meaning of *Saks*).

Although Jachnik's actions, limited to oral exchanges, are distinguishable from the cited cases because she performed no physical action resulting in a scalded ear, spilled coffee, or spilled food, that does not make her actions less of an unusual or unexpected event that was external to plaintiff. The cited cases show that "accident" is interpreted broadly. Even in *Saks,* the Court cautioned that the passenger need show only that "some link in the chain" was an unusual or unexpected event external to him or her. *Saks,* 470 U.S. at

406, 105 S.Ct. 1338. Given the Court's admonition that the definition be "flexibly applied," I conclude that Jachnik's acts of preventing plaintiff and his children from changing seats, engaging in heated, argumentative exchanges with plaintiff, informing him that he could be arrested if he did not stay in his seat and if his children did not stay in their seats, and publicly humiliating him, meet the definition of an "accident" as articulated in *Saks.*

III. Injury

Defendant next argues that plaintiff's claims are barred because the Warsaw Convention prohibits claims for purely mental distress injuries. Plaintiff argues that emotional distress accompanied by physical manifestation is recoverable under Article 17.

In a 1991 case, the Supreme Court considered whether claims for purely emotional trauma are cognizable under the Convention. *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). There, the plane in which the plaintiffs had been flying lost power in all three engines and began to rapidly lose altitude. The passengers were informed that the plane would be ditched into the Atlantic Ocean. Luckily, however, the crew managed to restart an engine and land the plane safely.

The plaintiffs filed suit "each claiming damages solely for mental distress arising out of the incident." *Id.* at 533, 111 S.Ct. 1489. The Court, after interpreting the French phrase "lesion corporelle," held that Article 17 allows *no recovery for purely mental injuries. Id.* at 534, 111 S.Ct. 1489. The Court concluded that "an air carrier cannot be held liable under Article 17 when an accident has not caused a passenger to suffer death, physical injury, or physical manifestation of injury." *Id.* at 552, 111 S.Ct. 1489.

Upon questioning at oral argument, plaintiff made clear that he is not alleging that he suffered the alleged physical symptoms as a direct result of the incident. He affirmatively represented that his physical symptoms appeared later as a manifestation of the emotional distress which was the direct result of the incident. The issue here is whether plaintiff's complaints of nausea, cramps, perspiration, sleeplessness, nervousness, and tension as physical manifestations of his emotional distress, are compensable under the Convention. Although I found no Ninth Circuit cases on point, there are cases from other courts which guide my analysis.

In *Terrafranca v. Virgin Atlantic Airways, Ltd.,* 151 F.3d 108 (3rd Cir.1998), the plaintiff sued to recover for trauma incurred after the passengers were informed of a bomb threat against the plane during the flight. The plaintiff experienced emotional distress and alleged that she suffered weight loss as a result of the incident. She argued that the weight loss was a physical manifestation of the emotional injury, sufficient under *Floyd* to be considered a "bodily injury" qualifying for recovery under the Convention.

After a fairly extensive discussion of *Floyd,* the Third Circuit rejected the plaintiff's argument and held that Article 17 and *Floyd* establish bodily injury as the prerequisite to recovery and that mere physical manifestations of emotional injuries are insufficient. *Id.* at 111. In summary, the court stated:

> the text of the Warsaw Convention establishes "bodily injury" as a precondition to recovery. The Supreme Court endorsed this translation in *Floyd* and held that this requirement has a distinctly physical scope. We therefore hold that [the plaintiff] must demonstrate direct, concrete, bodily injury as opposed to mere manifestation of fear or anxiety.

*Id.*

Similarly, in a very recent decision from the Southern District of New York, the plaintiff suffered a burning sensation on his knees and buttocks and bruising in both places as a result of an emergency evacuation. *Alvarez v. American Airlines, Inc.,* No. 98 Civ. 1027(MBM), 1999 WL

691922, at *1 (S.D.N.Y. Sept.7, 1999). He also experienced nightmares, anxiety attacks, and post-traumatic stress disorder. The court held that the plaintiff's claims of physical injury were proper. *Id.* at *3. The court noted, however, that the plaintiff's claims for "damages arising from alleged psychological injuries presents a more difficult question." *Id.* The plaintiff had not alleged that there was any causal connection between the physical and psychological injuries. After discussing the relevant case law, the court concluded that "in a case governed by Article 17, a plaintiff may recover compensation for psychological and emotional injuries only to the extent that these injuries are proximately caused by his or her physical injuries." *Id.* at *5. The court added: "Psychological and emotional injuries that are merely accompanied by physical injuries are not compensable." *Id.*[2]

Defendant relies on a recent Supreme Court case to argue that the type of manifestations plaintiff describes are not recognized as stating the required injury. In *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999), the plaintiff was subjected to an extended search of her person before being allowed to board the plane. At the district court, the plaintiff alleged that the incident caused her to be sick, upset, nervous, and have a headache. *Tseng v. El Al Israel Airlines, Ltd.*, 919 F.Supp. 155, 157 (S.D.N.Y.1996), *rev'd in part*, 122 F.3d 99 (2d Cir.1997), *rev'd*, 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). She was treated for "headaches, upset stomach, ringing in her ears, nervousness and sleeplessness, all of which had bothered her since she was searched." *Id.* The district court held that she had not suffered the required injury under *Floyd:*

> the plaintiff sustained no bodily injury. Her body was not injured by the woman who searched her. . . . On the contrary, all of her personal injuries are attributable to her shock and outrage at the way she was treated. Although her injuries may have had physical manifestations, those are the types of psychic or psychosomatic injuries barred by *Floyd* and not the "bodily injury" for which compensation is available under Article 17 of the Convention.

*Id.* at 158, 111 S.Ct. 1489.

The Second Circuit reversed the district court on the issue of whether the plaintiff's exclusive remedy was under the Convention and whether the Convention precluded the plaintiff from maintaining a state law tort claim, but did not discuss whether plaintiff's allegations amounted to the requisite injury. *Tseng v. El Al Israel Airlines, Ltd.*, 122 F.3d 99 (2d Cir.1997). The Supreme Court reversed the Second Circuit and agreed with the district court that the plaintiff's exclusive remedy was under the Convention. *Tseng*, 119 S.Ct. at 668. As to the injury issue, the Court, in the beginning of its opinion, simply stated that the plaintiff "alleges psychic or psychosomatic injuries, but no 'bodily injury' as that term is used in the Convention." *Id.* at 667.

The question of whether the symptoms expressed by the plaintiff amounted to the required bodily injury was not at issue before the Second Circuit and was not before the Supreme Court. *See El Al Israel Airlines, Ltd. v. Tseng*, 523 U.S. 1117, 118 S.Ct. 1793, 140 L.Ed.2d 935

---

**2.** At first glance, this decision seems to contradict a 1992 decision by the same court. In *Chendrimada v. Air–India*, 802 F.Supp. 1089 (S.D.N.Y.1992), the court held that the plaintiff's allegations of weakness, nausea, severe cramps, pain, anguish, and malnutrition as a result of being kept on board a grounded airplane for eleven hours without food, met the "physical injury or manifestation of physical injury" requirement of *Floyd.* Upon clos-

er examination, it is clear that *Chendrimada* is consistent with *Alvarez* because the *Chendrimada* plaintiff's injuries were physical injuries as a direct result of the "accident." *See also Weaver v. Delta Airlines, Inc.*, 56 F.Supp.2d 1190 (D.Mont.1999) (plaintiff's medical evidence showed that her post-traumatic stress disorder was, in fact, a brain injury and thus, because plaintiff's claim was a physical injury, it was compensable).

(1998) (granting petition for certiorari); *Tseng,* 122 F.3d at 102 (other than noting that a plaintiff may not recover for purely psychic injuries, no discussion of bodily injury requirement under facts presented by the plaintiff). Thus, the precedential value of the Court's determination that the plaintiff alleged no bodily injury as that term is used in the Convention is somewhat questionable. Nonetheless, it is an indication that the Supreme Court would likely not find injuries purely descended from emotional distress to be compensable under the Convention. In addition, the district court's conclusion is relevant and in line with *Terrafranca* and *Alvarez.*

In contrast is a 1997 case from the Northern District of Illinois in which the court held that Article 17 allowed recovery for "pre-impact" terror when the passengers sustained physical injuries as well. *In re Aircrash Disaster Near Roselawn, Ind. on October 31, 1994,* 954 F.Supp. 175, 179 (N.D.Ill.1997). In reaching its decision, the court discussed *Floyd* and cited several cases which have applied *Floyd* to hold that "emotional distress claims flowing from the accident (as opposed to some physical injury sustained in the accident) are unrecoverable." *Id.* at 179 (citing, *inter alia, Jack v. Trans World Airlines, Inc.,* 854 F.Supp. 654 (N.D.Cal.1994)). Nonetheless, while the court recognized the appeal of the reasoning of those cases, it rejected an interpretation of Article 17 that allows recovery for a mental injury only if the mental injury is caused by a bodily injury. *Id.*

The continued validity of *Roselawn* is questionable after the Supreme Court decision in *Tseng.* Additionally, it is distinguishable from the facts of the instant case. In *Roselawn,* the passengers, none of whom survived the crash, suffered catastrophic injuries as well as pre-impact terror as a direct result of the "accident." Here, in contrast, the only physical symptoms arise solely from plaintiff's emotional distress and are not directly related to the "accident."

It is worth noting a more or less "hybrid" approach endorsed by the Northern District of California in *Jack.* There, passengers aboard a flight from New York to San Francisco experienced an aborted takeoff, crash, and fire. *Jack,* 854 F.Supp. at 657. All passengers survived. Many suffered minor injuries and many were traumatized by the incident. Actions by three passengers with international tickets were governed by the Convention.

At issue was the propriety of the claims by those who suffered emotional distress or emotional distress "plus minor physical injuries." *Id.* at 663. The court noted that *Floyd* did not resolve the issue of whether, in situations where emotional distress is accompanied by bodily injury, "the recoverable damages—including emotional distress—are those caused by the bodily injury or by the accident itself[.]" *Id.* at 665. After a lengthy analysis of the various approaches regarding emotional distress in Convention cases, the court adopted an approach under which damages "are permitted for emotional distress only to the extent the emotional distress is caused by the bodily injury." *Id.* at 667. The court further explained:

> Plaintiffs with impact injuries may recover for their impact injuries and the emotional distress flowing only from the physical injuries. They may also recover for the physical manifestations of their emotional distress. Plaintiffs with physical manifestations may recover damages for the manifestations and any distress flowing from the manifestations, but may not recover damages for the emotional distress that led to the manifestations. In both instances, the emotional distress recoverable is limited to the distress about the physical impact or manifestation, i.e., the bodily injury. Recovery is not allowed for the distress about the accident itself.

*Id.* at 668.

█ In the instant case, even if I were to adopt the reasoning of *Jack,* plaintiff could not recover because first, he cannot

recover from the emotional distress leading to the physical manifestations and second, he disavows any emotional distress stemming from the manifestations. Rather, plaintiff's injuries are, like the plaintiff's in *Tseng,* purely psychic injuries for which recovery is unavailable.

Following the reasoning in *Terrafranca, Alvarez,* and *Tseng,* I conclude that plaintiff has not stated the required "bodily injury" as that phrase has been interpreted in *Floyd.* Plaintiff does not assert compensable injuries under the Convention.

## IV. Exclusive Remedy

■ Defendant argues that plaintiff's claim is governed solely by the Warsaw Convention and that plaintiff cannot maintain any independent state law causes of action against defendant. I agree.

In *Tseng,* the Supreme Court addressed the issue of whether a passenger whose claim was governed by the Convention but who did meet Article 17's bodily injury and accident requirements, could still recover under state tort theories. The Court held that "the Warsaw Convention precludes a passenger from maintaining an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention." *Tseng,* 119 S.Ct. at 675. In its discussion, the Court also noted that even if the incident was an "accident," the result would be the same because the "bodily injury" condition for a Warsaw Convention claim was still unmet. *Id.* at 670 n. 9. As the court noted: "The question whether the Convention precludes an action under local law when a passenger's claim fails to satisfy Article 17's conditions for liability does not turn on which of [the] conditions the claim fails to satisfy." *Id.*

Here, because I conclude that plaintiff has not met the injury requirement, he has no Warsaw Convention claim and under *Tseng,* he is precluded from asserting any other independent state law claim.

## V. Willful Misconduct

■ Plaintiff alleges that defendant's actions constitute willful misconduct. Defendant assumes the truth of that allegation for the purposes of this motion.

Article 25 of the Convention provides:

(1) The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.

49 Stat. 3020.

Plaintiff argues that, under Article 25, defendant's alleged willful misconduct exempts plaintiff's claims from the Convention's application. Plaintiff suggests that this is a case of first impression because plaintiff can find no cases addressing Article 25's application, or lack thereof, to an "accident" comprised of solely intentional conduct motivated by nothing other than ill will. In all other cases, according to plaintiff, the facts supported a finding of a mistake by defendant, not an intent to cause harm.

As originally enacted, the Convention contained a limitation on liability of approximately $8,300 and an exclusion from liability if the carrier showed that it acted with due care. *See, e.g., In re Korean Air Lines Disaster,* 932 F.2d at 1485 (describing original ratification of Convention). As further explained by the *Korean Air Lines* court:

With respect to flights to or from the United States, these provisions were superseded by the Montreal Agreement, an agreement among air carriers executed in 1966 and approved by the Civil Aeronautics Board pursuant to its authority under the Federal Aviation Act of 1958. In the Montreal Agreement, air carriers raised the per passenger liability limit to $75,000 and assumed virtual strict liability for death or injury

of passengers by waiving their due care defenses under Article 20(1).

*Id.*

In the *Korean Air Lines* case, the District of Columbia Circuit analyzed whether a finding of willful misconduct under Article 25 created a right to recover punitive damages. The court noted that "[i]t is settled that willful misconduct negates the due care exclusion from liability contained in Article 20 and the monetary limitations contained in Article 22." *Id.* at 1488–89. The court stated that other "key articles" in the Convention continued to apply in cases of willful misconduct, and "no authority suggests that the basic liability terms of Article 17 . . . were to be displaced." *Id.* at 1489.

Under *Korean Air Lines,* Article 25 only lifts the monetary liability limitations in Article 20 and the due care exemption in Article 22.[3] It does not allow a passenger with an invalid Article 17 claim to avoid the requirements of Article 17, namely that there be an "accident" as defined in *Saks,* and a "bodily injury" as interpreted in *Floyd,* and directly assert a claim under Article 25.

As explained in a 1996 district court decision:

> Article 25 does not in itself create any liability on the part of international air carriers; it merely removes a limitation on the liability already imposed by Article 17 where the airline is guilty of willful misconduct . . . In sum, Article 25 serves only to remove a limitation of a liability that already exists under Article 17. . . . It does not create an additional and independent predicate for liability, and no court has ever so held.

*In re Hijacking of Pan Am. World Airways, Inc. Aircraft at Karachi Int'l Airport, Pak. on Sept. 5, 1986,* 920 F.Supp. 408, 413 (S.D.N.Y.1996) (citations omitted);

*see also Harpalani v. Air–India, Inc.,* 634 F.Supp. 797, 799 (N.D.Ill.1986) ("Article 25 is most reasonably interpreted as an exception to the Convention's limitations on the recovery of compensatory damages, not as authority for a form of damages not permitted elsewhere in the Convention.").

Although some of these cases interpret the limitations prong of Article 25 rather than the exclusion prong, the reasoning is sound regardless of the issue at hand. While plaintiff here relies on Article 25's exclusion language rather than the limitations language, cases interpreting Article 25 make clear that Article 25 does not undo all of the requirements of the previous Articles of the Convention.

Given that plaintiff must still articulate a valid Article 17 claim before reaching Article 25 and may not assert a claim under Article 25 directly, plaintiff's only avenue is to argue that purely intentional conduct, like that at issue here, is not an "accident" under Article 17, and thus, not governed by the Convention. This argument, however, is unpersuasive. As explained in the Second Circuit's opinion in *Tseng,* where the plaintiff argued that because the conduct was willful misconduct it could not be an accident within the meaning of Article 17,

> [t]he two articles are not mutually exclusive; rather the finding of an "accident" under Article 17 is a prerequisite to the imposition of any liability for the personal injuries of a passenger. . . . Article 25 simply describes a subset of "accidents" that are more egregious and to which a greater degree of culpability attaches.

*Tseng,* 122 F.3d at 104 (citations omitted).

Article 25's willful misconduct exemption from the Convention's limitations and exclusions has been correctly understood to

---

**3.** Because, as noted above, the Montreal Agreement, which superseded certain portions of the Convention for flights to or from the United States, has already eliminated the due care defense, the exemption from the due care defense in Article 25 has virtually no applicability to flights to or from the United States. Additionally, because the due care defense already plays no role in such flights, United States cases interpreting the exemption from the due care defense are almost nonexistent.

relate only to Article 22's monetary limitation and Article 20's due care exclusion. While it is possible to argue that the drafters intended purely intentional conduct to be an exclusion from the "accident" requirement of Rule 17, such an argument would run afoul of the Supreme Court's broad interpretation of "accident" in *Saks* which made no suggestion that the term depended on the motive of the actor. The Supreme Court, in interpreting the term "accident" in *Saks,* made clear that it was discerning what the drafters had originally intended. Such original intent, as expressed in *Saks,* did not include an exclusion for purely intentional conduct.

Finally, plaintiff argues that it is against public policy to read Article 25 as affecting only the due care exclusion and the monetary limitations and as requiring a valid Article 17 claim because it leaves him with no remedy for deliberately intentional conduct. Although I agree that the result leaves plaintiff without a remedy, this Court is not the proper forum in which to address the problem. Plaintiff must look to Congress, not the courts, to rectify such inequities. *See, e.g., Zicherman v. Korean Air Lines Co.,* 516 U.S. 217, 231, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996) (it is the function of Congress, not the Supreme Court, to decide that the law provides inadequate deterrence to willful misconduct).

## CONCLUSION

Defendant's motion for summary judgment (# 12) is granted.

IT IS SO ORDERED.