### Gayle Harper BRUNK, Plaintiff,

v.

### BRITISH AIRWAYS PLC, Defendant.

### No. CIV.A.00-00764(HHK).

United States District Court, District of Columbia.

April 15, 2002.

---

**90.** *Standardized Civil Jury Instructions for the*  *District of Columbia* at 2–5.

Nicholas Gilman, Gilman & Associates, Washington, DC, for Plaintiff.

Thomas James Whalen, Brenda Ann Heffernan, Condon & Forsyth, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

KENNEDY, District Judge.

By this action plaintiff, Gayle Harper Brunk, seeks to recover for personal injuries she sustained when she fell while on board a British Airways flight from London to Virginia. Before the court is the motion of defendant, British Airways, for summary judgment. Upon consideration of the motion and the opposition thereto, the court concludes that the motion must be denied.

## I. FACTUAL BACKGROUND

The following facts are either undisputed or portrayed in the light most favorable to Brunk. On April 19, 1998, Brunk, then 46 years old, along with her son Jordan, boarded British Airways Flight 223 bound from London's Heathrow Airport to Dulles International Airport in Virginia. Brunk occupied a middle seat in row 44 at the rear of the aircraft. Her son sat in the aisle seat. After consuming an in-flight meal midway through the flight, Brunk left her seat and went to the lavatory. While in the lavatory, Brunk felt some turbulence which caused the flight "to [get] quite rough." Pl.'s Opp. to Mot. for Summ. J., Ex. D, at 30. Upon returning from the lavatory, she attempted to step past her son in order to get back into her seat. At the very moment that Brunk was maneuvering back into her seat, the plane suddenly was hit by a jolt of turbulence, lifting Brunk off her feet and causing her to fall to the floor of the airplane.

As a result of the fall, Brunk immediately felt great pain in her knee and was unable to walk. A doctor's examination later revealed that she tore ligaments in her knee necessitating surgery to repair.

## II. ANALYSIS

Because Brunk sustained her injuries on board an international commercial flight, her claim is governed by the Warsaw Convention.[1] *El Al Airlines, Ltd. v. Tseng*, 525 U.S. 155, 176, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). Recovery, "[i]f not allowed under the Convention, is not available at all." *Id.* at 161, 119 S.Ct. 662. Under Article 17 of the Convention, British Airways is liable for Brunk's injuries if those injuries were caused by an "accident."[2] Relying on cases that have addressed

---

1. The Warsaw Convention is officially known as Convention for the Unification of Certain Rules Relating to the International Transportation by Air, October 1, 1929, 49 Stat. 3000 (1934), *reprinted in note following* 49 U.S.C. § 40105 (1997) [hereinafter Warsaw Convention].

2. Article 17 states:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

whether a plaintiff can recover for injuries sustained on an airplane due to turbulence,[3] British Airways asserts that it is entitled to judgment as a matter of law because the turbulence which Brunk claims caused her injury was not sufficiently severe to constitute an "accident" within the meaning of Article 17. British Airways' position cannot be sustained.

The Supreme Court defined the term "accident" for purposes of the Warsaw Convention as "an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). If, however, the injury "results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident." *Id.* at 406, 105 S.Ct. 1338. Recognizing that the question of whether an event is unusual or unexpected is necessarily fact-specific, the Court noted that the "definition [of accident] should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Id.* at 405, 105 S.Ct. 1338. The Court also observed that the term "accident," had been defined "broadly enough" by lower courts to include various types of injuries. *See id.* at 405, 105 S.Ct. 1338. Lower courts have since read this language to mean that "accident" should be broadly construed, *see, e.g., Husain v. Olympic Airways*, 116 F.Supp.2d 1121, 1131 (N.D.Cal.2000); *Carey v. United Airlines, Inc.*, 77 F.Supp.2d 1165, 1170 (D.Or. 1999), and have determined that an objective test is to be employed when determining whether an event is unexpected or unusual. *See Husain*, 116 F.Supp.2d at 1130.

Viewed in a light most favorable to Brunk, as this court is required to do at this stage of the litigation,[4] the evidence shows that Brunk sustained an injury caused by a jolt of turbulence substantial enough to cause her to leave her feet and to fall to the floor of the airplane with such an impact that the ligaments in her knee were torn. The turbulence induced a sensation likened to that resulting from the "dip ... on a roller coaster," [5] Pl.'s Opp. to Mot. for Summ. J., Ex. F, at 10, and, in addition to causing Brunk to fall, dislodged several of the passengers' food trays and caused them to spill off their tray table

---

3. Turbulence is generally defined as "random, unpredictable motion that occurs at the boundary between layers of air moving at different speeds." Ron Cowen, Clearing the Air About Turbulence, Science News Online, June 27, 1998, *at* <http://www.science-news.org/sn_arc98/6_27_98/bobl.htm>. It often cannot be seen and can occur unexpectedly. *See* FAA, Facts About Turbulence (last visited Feb. 5, 2002). <http://www.faa.gov/apa/turb/Facts/fact.htm>.

4. Of course black letter principles of law govern this court's review of the motion for summary judgment. Under Federal Rule of Civil Procedure 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact in dispute and that the movant is entitled to judgment as a matter of law. At the summary judgment stage, the evidence of record is viewed in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences. *See Forman v. Small*, 271 F.3d 285, 291 (D.C.Cir. 2001). Therefore, the extended discussion in British Airways' motion regarding the evidence that favors its position and arguably reflects poorly on Brunk's is of no moment.

5. Consistent with governing law that requires the evidence to be viewed in the light most favorable to the non-moving party when considering a motion for summary judgment, the court assumes the roller coaster dip to which the declarant was referring is the first steep drop on a roller coaster ride rather than the considerably smaller ones that follow the first steep drop of the ride. By design, the first drop on the average-sized roller coaster is gut wrenching.

and onto the floor. Applying the teaching of *Saks* and elementary summary-judgment principles, it is apparent that British Airways' motion for summary judgment must be denied. A reasonable juror could find that Brunk's injury was caused by an "unusual or unexpected event," a precipitous drop of the airplane during moderate to severe turbulence, and not by her own internal reaction to the usual, normal, and expected operation of an aircraft.[6]

The cases upon which British Airways rely do not prescribe a different result. Its reliance on *Quinn v. Canadian Airlines Int'l Ltd.*, No. 35558/91U, 1994 Ont. C.J. LEXIS 1681 (Ont.Ct. May 30, 1994), *aff'd* 1997 Ont. C.A. LEXIS 267 (Apr. 30, 1997) [hereinafter *Quinn*], is particularly misplaced. In *Quinn*, the plaintiff was a 72 year old grandmother with an advanced case of osteoporosis, a condition that the plaintiff's doctor testified can result in the type of injury the plaintiff sustained, crushed vertebrae, "almost spontaneously." *Quinn, supra,* at 37. At the time of the turbulence that she alleges caused her injury, the plaintiff was seated and her "seat belt was securely fastened." The turbulence itself was described as "really rough," "markedly worse than anything [the plaintiff] had ever experienced in the air," and "felt as though the plane had dropped and stopped with a bump" like it "hit the ground." *Id.* at 24–25. After weighing the evidence presented at the *trial,* Judge Sutherland determined that the defendant was entitled to judgment.

In arriving at his verdict, Judge Sutherland made two penultimate findings. First, observing that "[a]ir turbulence itself is not unexpected or unusual" and that "[u]p to some level of severity it is a commonplace of air travel," he determined that the turbulence to which the plaintiff attributed her injuries, which he characterized as less than severe, "did not amount to an 'accident' within the meaning of Art. 17 of the Warsaw Convention as the term accident is defined in [*Air France* ] .." *Id.* at 60. Second, Judge Sutherland determined that, "[t]o the extent that the plaintiff was injured *or may have been injured on the flight,* the major contributing cause of her injuries *was the extremely osteoporotic condition of the bones of her spine.*"*Id.* at 60–61 (emphasis added).[7]

6. The FAA divides turbulence into four categories: light, moderate, severe, and extreme. Light turbulence is turbulence that causes slight, rapid and somewhat rhythmic bumpiness without appreciable changes in altitude or attitude. Occupants may feel a slight strain against seat belts or shoulder straps. Unsecured objects may be displaced lightly. Food service may be conducted and little or no difficulty is encountered in walking.

Moderate turbulence is turbulence that is similar to light turbulence but of greater intensity. Changes in altitude and/or attitude occur but the aircraft remains in positive control at all times. It usually causes variations in indicated airspeed. It causes rapid bumps or jolts without appreciable changes in aircraft altitude or attitude. Occupants feel definite strains against seat belts or shoulder straps. Unsecured objects are dislodged. Food service and walking are difficult.

Severe turbulence is turbulence that causes large, abrupt changes in altitude and/or attitude. It usually causes large variations in indicated airspeed. The aircraft may be momentarily out of control. Occupants are forced violently against seat belts or shoulder straps. Unsecured objects are tossed about. Food service and walking are impossible.

Extreme turbulence is turbulence in which the aircraft is violently tossed about and is practically impossible to control. It may cause structural damage. *See* Turbulence Reporting Criteria Table, FAA Manual, Tbl. 7–1–7, *available at* <www.faa.gov/atpubs/AIM/Chap7/aim0701.html> (last visited Feb. 25, 2002).

7. Judge Sutherland's statement referencing the possibility that the plaintiff was not injured on board the international flight responds to the "serious disagreement as to the

A plain reading of *Quinn* demonstrates that it offers no support for British Airways' position that, as a matter of law, the turbulence that caused Brunk's injury was not of sufficient severity to qualify as an "unexpected or unusual event." The facts of *Quinn* and this case are obviously very different and, more importantly, the standard to be applied at this stage of the litigation is different from the standard applied by the court in *Quinn*.

*Magan v. Lufthansa German Airlines*, 181 F.Supp.2d 396 (S.D.N.Y.2002), is a little closer to the mark but ultimately provides little support for British Airways' position. While *Magan* is a summary-judgment case, the degree of turbulence that caused the injury to the plaintiff in that case was considerably less severe than a reasonable juror could find occurred here. The *Magan* court determined the severity of the turbulence that caused the injury to the plaintiff on the basis of the following facts:

> In his deposition, Mr. Magan stated that after he left the lavatory, he 'moved as swiftly as [he] could and as safely as [he] could up the aisle using the backs of the passenger seats to negotiate [his] way.' At that time, 'the entire aircraft was seated, including the flight attendants.' He elaborated by saying, 'I am not claiming at all that the aircraft pitched and hurled me into the obstruction at row 5. But what happened is I hit my head on the [center tank].' Finally, in

his answers to the defendant's interrogatories, the plaintiff states that 'the aircraft was shaking sufficiently so as to make it difficult to stand.' The plaintiff has offered no evidence of any other passenger complaints or injuries or any unsecured objects moving about the cabin.

*Magan*, 181 F.Supp.2d at 403 (internal citations omitted).

As with *Quinn*, the facts of this case are easily distinguished from those in *Magan*. In *Magan*, the light or moderate turbulence caused the 6'4" plaintiff to bump his head on the aircraft's center tank. Here, the plane made a sharp dip, indicating that the plane may have experienced a sudden change in altitude, lifted Brunk off her feet, and caused her to fall to the floor of the aircraft with an impact sufficient to tear ligaments in her knee. In *Magan*, there was no evidence that any unsecured objects moved about the cabin. Here, food trays fell off their tray tables and onto the floor.

Rather than seriously arguing that the facts of *Quinn* and *Magan* are similar to the facts of this case, British Airways appropriates these courts' pronouncements in explanation of their decisions in an effort to move the legal goal posts for international air passengers who seek to recover for injuries allegedly caused by air turbulence.[8] Thus, British Airways doubtless

---

causation of the compression fractures of three of the plaintiff's verterbrae between the highly regarded orthopaedic surgeons called on behalf of the plaintiff and on behalf of the defendant." *Quinn*, *supra*, at 34.

**8.** An effort to "move the legal goal posts" is the only explanation that this court can discern for British Airways' inclusion of the commentary of Davis L. Wright, *Flying the Overly Friendly Skies: Expanding the Definition of a Warsaw Convention 'Accident*,' 19 Aviation Litig. Rep. 1 (July 10, 2001), in its

reply to plaintiff's opposition to the motion for summary judgment. This article is cited to support an undisputed proposition, "[t]he Warsaw Convention was not intended to impose absolute liability on airlines for all injuries sustained to (sic) passengers during international transportation," and is touted as a "highly comprehensive" article that sets out "the current law on what constitutes an 'accident' under Article 17 of the Warsaw Convention. Def.'s Reply, at 6 & n. 10. This commentary criticizes the Second Circuit's

would like this court to hold, as did the court in *Magan*, that "where a passenger sustains an injury that is caused by turbulence, the turbulence will not constitute an 'accident' within the meaning of Article 17 of the Warsaw Convention unless she can establish that the turbulence was 'severe' or 'extreme,' as defined by the FAA." *Magan*, 181 F.Supp.2d at 402. This court shall not do so for two reasons.

First, the *Magan* court's rationale for its rule is not persuasive. In arriving at its rule, the *Magan* court first makes an observation with which no one could disagree, that turbulence "is a difficult concept to quantify." The second step of its syllogism is to find significance in the Supreme Court's statement in *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999), that "'the cardinal purpose'"of the Warsaw Convention is to 'achiev[e] uniformity of rules governing claims arising from international air transportation." *Magan*, 181 F.Supp.2d at 401. Finally, in supposed service of the Convention's cardinal purpose, *Magan* determined that it would be "wise to lay down clear and workable rules when it is reasonable to do so, as such rules serve [the] goal of uniformity." *Id.* This syllogism is spurious because its premise is faulty.

*Tseng* is the leading Supreme Court decision on the preemptive scope of the Warsaw Convention. The plaintiff in *Tseng* alleged that she suffered psychosomatic injuries due to an invasive security search prior to boarding an international flight. *Tseng*, 525 U.S. at 160, 119 S.Ct. 662. Because her injuries did not constitute a

"bodily injury" and did not result from an "accident" as required under Article 17, the plaintiff acknowledged that she could not recover under the Convention and instead sought to recover under New York tort law. *See id.* at 160–61, 119 S.Ct. 662. The Court found that the plaintiff's state tort claims were preempted under the Convention, even though the Convention barred her from recovery, and she was thus left without a cause of action. *See id.* at 176, 119 S.Ct. 662.

The Court rested its holding not on the nature of the claims being brought, but on the importance of uniformity in the treaty's liability scheme. As the Court explained, "Before [the Convention], injured passengers could file suits for damages, subject only to the limitations of the forum's laws ... This exposure inhibited the growth of the then-fledgling international airline industry." *Id.* at.170. Given this background and the Convention's "textual emphasis on uniformity," the Court found itself "hard put to conclude that the Warsaw delegates meant to subject air carriers to the distinct, nonuniform liability rules of the individual signatory nations." *Id.* at 157, 119 S.Ct. 662. It is apparent then that the "uniformity" to which the Supreme Court refers in *Tseng* is not uniformity of rules that govern claims brought under Article 17 of the Convention—the plaintiff in *Tseng* made no such claim—but rather the desire of the signatory nations to have a uniform rule, the Warsaw Convention, that would govern the liability of international air carriers. Such a scheme would serve the then-fledgling internation-

decision in *Wallace v. Korean Air*, 214 F.3d 293 (2d Cir.2000), *cert. denied*, 531 U.S. 1144, 121 S.Ct. 1079, 148 L.Ed.2d 955 (2001), holding that the definition of a Warsaw Convention "accident" includes co-passenger sexual assaults. Mr. Wright is of the view that "courts should redefine accident as

an injury-causing occurrence during air travel that was proximately caused by the airline's actions or inactions." Wright, *supra*, at 8. Mr. Wright is welcome to his view, but this court is bound by the definition set forth by the Supreme Court of the United States.

al airline industry better than one that would subject international carriers to each signatories' laws. It is relevant to note as well that the "uniformity" to which the Court in *Tseng* refers was not the goal so much "as a means to balance the need to expand international air service *and* the need to compensate injured passengers." *Gibbs v. American Airlines, Inc.*, 191 F.Supp.2d 144, 148 (D.D.C.2002) (emphasis added).

Aside from the *Magan* court's misreading of *Tseng*, this court shall not adopt its bright line approach because to do so would require the court to ignore the limits of its office. Lawmaking is something that is not within the proper province of this, or any other, court, no matter how laudable the goal. Moreover, in addition to reflecting an erroneous view of the proper limits of the judicial office, a trial court that crafts a rule for decision because it "will serve the goal of uniformity," engages in an exercise in futility. Because no other court is bound to follow the rule, the "uniformity" which is actually achieved does not extend beyond the judge that crafts it. Rather than engaging in such an exercise, this court shall apply the settled law.

### III. CONCLUSION

The summary judgment record must be assessed in the light most favorable to Brunk and she must be given the benefit of all reasonable inferences that can be drawn from the evidence that comprises that record. When these elementary principles are applied to the summary-judgment record, it is apparent that a reasonable juror could conclude that plaintiff's injury was caused by an accident, i.e., an unexpected or unusual event or happening that is external to the passenger.

Consequently, it is this ———— day of April, 2002, hereby

**ORDERED** that defendant's motion for summary judgment is **DENIED**.